# ANDRE HUNT *v.* STATE OF MARYLAND

[No. 293, September Term, 1973.]

*Decided February 14, 1974.*

The cause was submitted on briefs to ORTH, C. J., and POWERS and MOORE, JJ.

Submitted by *Barry S. Frame* for appellant.

Submitted by *Francis B. Burch, Attorney General, James*

G. Klair, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City, and Steven Tully, Assistant State's Attorney for Baltimore City, for appellee.

POWERS, J., delivered the opinion of the Court.

Lest our decisions in *Skinner v. State*, 16 Md. App. 116, 293 A. 2d 828 (1972) and *Nutt v. State*, 16 Md. App. 695, 299 A. 2d 468 (1973) be misconstrued, we shall give our reasons for affirming the conviction of Andre Hunt on a charge of maintaining his apartment as a common nuisance, based upon evidence seized on a single day in the execution of a search warrant. We also affirm his convictions on several counts of possession of narcotics and paraphernalia.

The search warrant was issued on the application of Detective Thomas W. West of the Narcotics Unit of the Baltimore City Police Department. He and Detectives Pennington and Requer executed the warrant at 8:00 A.M. on 14 May 1972 by a search of Hunt's apartment at 1675 Vincent Court, and the seizure of contraband and other evidence there.

In a Sears Roebuck bag the detectives found a cellophane bag containing heroin, several measuring spoons, 10 or 12 playing cards, and numerous rubber bands. In a brown paper bag they found 250 glassine bags of heroin, in 10 bundles, each consisting of 25 bags. They also found a quantity of empty glassine bags, and a small envelope of marihuana.

In addition to the contraband the detectives seized numerous personal papers of Andre Hunt including letters, credit cards, and bills showing his name, and the address of 1675 Vincent Court. They also seized two photographs, one of a man known to Detective West as Bernard Lee, alias James Wesley Carter, alias Bighead Brother, a convicted narcotics violater. A single sheet of paper showed these notations: "$3200 — 1 pc", "1600 Bundles (16) 1/2 pc. cut down", "Bundles — set price for work at least $900", and a list of first names or nicknames. Sheets in a small notebook listed eight or nine first names or nicknames, after each of which was a single digit number such as 1, 2, or 5.

Detective West, conceded to be an expert in the area of narcotics, testified that he was familiar with most of the names. Asked what the numbers meant, he said:

"Obviously that he gave them five bundles of drugs, whatever number is besides the man's name is the number of bundles that he gave to him."

The detective explained the terms used:

"$3200.00 is what he paid for the piece, one ounce of heroin. Depending on the quality of it, evidently it was high quality heroin, $3200.00 for a piece. Normally it's a thousand to twelve to $1400.00 for a piece of heroin. He obviously put a considerable cut on it, having cut it down and packed it and put it into bundles similar to these, and then he distributed it to these various people, Souse, Ronnie, Al, Brother."

Summarizing the meaning of the things seized Detective West testified:

"This person was obviously purchasing relatively large quantities of drugs unadulterated, adulterating the drugs, and then packaging them into individual bundles, or individual glassine bags, placing them into 25 glassine bags per bundle, and distributing the bundles, but not the individual bags."

He classified it as a large operation.

In *Skinner v. State, supra,* this Court, speaking through Judge Moylan, made it clear that common nuisance under Code, Art. 27, § 286 (a) (5),[1] should be taken in its common law meaning in terms of the continuing and recurring character of the offense, as delineated by earlier appellate decisions in Maryland. We did not lay down a rule that because evidence is found only on a single occasion it cannot

---

1. This subsection is noted at the end of the common nuisance indictment of appellant in this case.

be sufficient to show a crime of a continuing nature. Explaining the question involved in *Skinner,* we said at 124:

> "Under the fourth count, the appellant was convicted of keeping his automobile as a common nuisance for the purpose of keeping or selling narcotic drugs, in violation of Article 27, Section 286. The only evidence against the appellant, in this regard, was that the contraband drugs and paraphernalia were found in his automobile on the single day when it was searched. The only question before us is whether the keeping and maintaining of a 'common nuisance' under Section 286 (a) (5) contemplates that the offense shall be of a continuing or habitual character or not. Although we have dealt with the statute on several occasions, we have never squarely interpreted its terms in this regard."

We then discussed a number of cases, including *Beard v. State,* 71 Md. 275, 17 A. 1044 (1889), *Ward v. State,* 9 Md. App. 583, 267 A. 2d 255 (1970), *Rosenberg v. State,* 12 Md. App. 20, 276 A. 2d 708 (1971), and *Killie v. State,* 14 Md. App. 465, 287 A. 2d 310 (1972). We concluded in *Skinner,* at 129:

> "We are persuaded that our Legislature, except insofar as it explicitly limited or expanded the definition, intended the phrase 'common nuisance' to have its common law meaning. The recurring nature of the offense being an element of the crime under Section 286 (a) (5), the proof in the case at bar of a single day's violation was legally insufficient to permit the case to go to the jury."

The "proof in the case at bar" in *Skinner* was that when police officers searched the automobile of a narcotics addict with probable cause to believe that it contained the fruits of a breaking and entering, they found narcotics [2] and narcotics

---

2. The quantity of narcotics must have been minimal. Skinner was not charged with possession of a sufficient quantity to reasonably indicate an intent to manufacture or distribute.

paraphernalia. There was no evidence from which a continuing or recurring nature of the possession could be inferred. There were simply no circumstances in *Skinner* to prove more than mere possession at the time of the search. But this does not mean that other circumstances, short of proof of a similar offense on a different day, may not well be sufficient in a given case to prove continuing acts constituting a common nuisance.

In *Ward v. State, supra,* Chief Judge Murphy discussed the recurring nature of the common law offense and pointed out at 593:

> " * * * But there is no particular extent of time prescribed during which the improper practices must continue or recur; *each case must be adjudged according to its own circumstances.* It is usually deemed sufficient if, when *the character of the culpable acts and the circumstances under which they were committed* are taken into account, it appears that they were repeated often enough to warrant an inference that the house was kept for the indulgence of such practices." (Emphasis added)

The opinion of this Court in *Nutt v. State, supra,* applied what we said in *Skinner* to the circumstances then before us. We said, at 708:

> "The evidence in the subject case at the substantive trial was limited exclusively to the introduction of articles seized at the time of search and testimony or stipulation as to their description, use and, as to some, their chemical properties. There was no evidence that the premises had been utilized in offenses of a continuing or recurring character."

Additional circumstances before the court below in *Nutt v. State* were confined to the affidavit in support of the application for the search warrant, and were not in evidence on the issue of guilt.

The evidence of the character of the culpable acts and the

circumstances under which they were committed in the present case shows not only a continuing narcotics operation described by Detective West as adulterating and packaging drugs in individual bags, and distributing them in bundles, but supports a rational inference that the operation was conducted in the  non-mobile location where the evidence was found. This evidence was sufficient to show continuing and recurring acts at 1675 Vincent Court which constituted the crime of maintaining a common nuisance.

Appellant moved before trial to suppress the evidence seized under the search warrant. He contended that the affidavit supporting the application for the warrant did not show probable cause for its issuance. Judge Sodaro heard arguments on the motion before the trial began, and denied it.

The affidavit set forth facts supplied to the affiant, Detective West, by an informant whose credibility was, we conclude, sufficiently established in the affidavit. The basis of the informant's knowledge was shown to be first-hand, and required no buttressing. The motion to suppress was properly denied.

*Judgments affirmed.*