42640. BARNES et al. v. THE STATE.
(339 SE2d 229)

MARSHALL, Presiding Justice.

In pertinent part, OCGA § 16-13-42 (a) (5) makes it unlawful for any person to knowingly "keep or maintain" any dwelling or other structure or place which is used for "keeping or selling" controlled substances in violation of the Georgia Controlled Substances Act. OCGA § 16-13-20 et seq. We granted certiorari in this case, *Barnes v. State,* 175 Ga. App. 621 (334 SE2d 205) (1985), to determine whether § 16-13-42 (a) (5) requires a showing of more than one instance of the proscribed activity, or more than a limited quantity of the controlled substance, to support a conviction. For reasons which follow, we hold that such a showing is required, and we reverse the appellants' conviction for violation of § 16-13-42 (a) (5) because no such showing was made here.

In this case, law enforcement officers from Gordon County and the City of Fairmont executed a search warrant at Barnes' Used Car Lot in Ranger, Georgia, on the afternoon of May 18, 1984. Also located on the site of the used car lot was the Barneses' home (a double-wide trailer), as well as a number of other trailers where employees, relatives, and other people lived.

When the law enforcement officers arrived at the premises, appellant Jimmy Lou Barnes, who is appellant Anthony Barnes' wife, ran toward the Barneses' double-wide trailer warning "raid" several times. In the Barneses' trailer, three people were present: Rita Fay Cronan (who had just gotten out of the shower and had a towel wrapped around her head), Jennifer Silver, and Jennifer Silver's son. Cronan said that she had been in the back bathroom, which was connected to the master bedroom. The Barneses' trailer also had a main bathroom and two other bedrooms. One of the other bedrooms was a spare bedroom. Employees, relatives, and friends were allowed to spend the night in the spare bedroom, as well as to use the kitchen and bathroom facilities. All employees were allowed unlimited access to the Barneses' trailer and were in and out of the trailer every day. The other bedroom in the trailer was used by the Barneses' son.

On the vanity beside the sink in the back bathroom were scales, three boxes of ziploc plastic bags (two labeled "storage bags" and one labeled "sandwich bags"), and a bag of brown paper bags labeled "lunch bags." On an open shelf was a money box, as well as a cannister of lactose, which contained a quantity of cocaine equivalent to less than one part per million. On the floor beside the vanity was a pocketbook belonging to Cronan, and the pocketbook contained three ounces of marijuana. Cronan invoked her Fifth Amendment privilege against self-incrimination at trial and then testified under a grant of immunity. She testified that she works at the used car lot; that she is the mother of appellant Anthony Barnes' daughter; that she had been staying in the trailer's spare bedroom occasionally, i.e., 40% of the time; and that she had purchased the marijuana in her purse from a "Diane," whose last name she did not know.

In a closet in the master bedroom was a grocery bag with numerous empty prescription bottles in it. In the living room/den was a decorative wood stove. In this stove there were found two baggies containing a residue of marijuana totaling in the aggregate 2.7 grams.

Appellant Anthony Barnes was not present at the time the search was executed. In addition, a woman doing house cleaning for the Barneses testified that she never saw any marijuana in the trailer. And there was no evidence from any witnesses that the Barneses or any other people had smoked marijuana in the trailer.

Among other things, the appellants were indicted for conspiracy to distribute marijuana (OCGA §§ 16-13-30 (j) (1) and 16-13-33), maintaining a dwelling house where controlled substances were stored (OCGA § 16-13-42 (a) (5)), the misdemeanor offense of possession of less than one ounce of marijuana (OCGA § 16-13-2 (b)), and the felony offense of possession of marijuana (OCGA § 16-13-30 (j)). The counts of the indictment charging conspiracy to distribute marijuana and felony possession of marijuana were based on the marijuana found in Cronan's pocketbook. The trial court directed a verdict in the appellants' favor on the conspiracy count, and they were acquitted by the jury on the felony-possession count. In addition, the trial court directed a verdict in the appellants' favor on other counts of the indictment charging them with possession of dextropropoxyphene (Darvon), and they were acquitted by the jury on counts of the indictment charging them with possession of cocaine, hydroxyzine, and phendimetrazine (Preludin). The evidence showed that the hydroxyzine was hive medicine prescribed for Cronan, and the Darvon and Preludin had been prescribed for other employees. The jury returned a verdict convicting the appellants of maintaining a dwelling house where controlled substances are kept, under § 16-13-42 (a) (5), and misdemeanor possession of less than an ounce of marijuana, under § 16-13-2 (b).

A person convicted of possession of less than one ounce of marijuana under § 16-13-2 (b) is guilty of a misdemeanor punishable by imprisonment for a period not to exceed 12 months or a fine not to exceed $1,000, or both, or public works not to exceed 12 months. A person convicted under § 16-13-42 (a) (5) of maintaining a dwelling house where controlled substances are kept or sold is guilty of a felony punishable under § 16-13-42 (b) by imprisonment for not more than five years or a fine of not more than $25,000, or both. Here, the appellants were sentenced to one year in prison, four additional years on probation, and a $25,000 fine.

Section 16-13-42 (a) (5) is derived from the Uniform Controlled Substances Act. 9 U.L.A. § 402 (a) (5) (1970). We are informed by the appellants that the vast majority of states have similar statutes. The Georgia statute provides:

"(a) It is unlawful for any person:

"(5) Knowingly to keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure, or place which is resorted to by persons using controlled substances in violation of this article for the purpose of using these substances, or which is used for keeping or selling them in violation of this article."

1. Section 11557 of California's Health & Safety Code provides: "It is unlawful to open or maintain any place for the purpose of unlawfully selling, giving away or using any narcotic."

In *People v. Holland*, 322 P2d 983 (Cal. App. 1958), the defendant was convicted of maintaining a place for the sale of narcotics in violation of § 11557, the evidence showing that a police informant had purchased narcotics from the defendant at the defendant's barbecue stand on one occasion. The California appellate court reversed the conviction, holding, "[t]here is no evidence that this barbecue stand was opened for the prohibited purpose. To constitute the offense of 'maintaining' there must be some purpose of continuity in the use of the place for the proscribed illegal conduct. . . . [E]vidence of a single, isolated instance of the sale of narcotics, standing alone, without any other corroborating circumstances of which the defendant is shown to have any knowledge, is not legally sufficient to prove that he was 'maintaining' the place at which the single sale was made for the purpose of selling narcotics." 322 P2d at pp. 986-987.

In *People v. Horn*, 9 Cal. Rptr. 578 (187 Cal. App. 2d 68) (1961), the police had maintained surveillance of an apartment in San Francisco. Subsequently, the police arrested five or six people who were discovered in the apartment injecting narcotic substances. Found in the apartment were various articles used for the injection of narcotics, and one of these articles contained a small residue of narcotics. Upon examining the evidence, and concluding that it did not support a finding of the selling, giving away, or using of narcotics in that apart-

ment on any other occasion, the appellate court reversed the defendant's conviction under § 11557. In interpreting § 11557, the court held, "[t]he proscribed '[single] purpose' is one that contemplates a continuity of such unlawful usage; a single or isolated instance of the forbidden conduct does not suffice." 9 Cal. Rptr. at p. 580.

On the other hand, in *People v. Clay*, 78 Cal. Rptr. 56 (273 Cal. App. 2d 279) (1969), the evidence showed that a house in Orange County, California, was inhabited by a group of people who could be described as a drug cult. An undercover narcotics agent negotiated a sale for the purchase of five pounds of hashish stored in the house. Over one-half a pound of marijuana was found in the garage, and drug paraphernalia and marijuana cigarette butts and debris were found throughout the house. In addition, the odor of marijuana permeated the house. Before consummating the drug sale, the undercover narcotics agent was required to sign a card stating, among other things, that he was not a police officer. A number of these cards were found in the house.

Distinguishing *Holland* and *Horn* on their facts, the court in *Clay* held that the evidence in that case was sufficient to support the finding that "there was a continuity of purpose both for sale and for use of narcotics." 78 Cal. Rptr. at p. 59.

2. Article 27, § 286 (a) (5) of the Anno. Code of Maryland prohibits the keeping or maintaining of:

"Any common nuisance which means any dwellinghouse . . . building . . . or any place whatever which is resorted to by drug abusers for the purpose of illegally administering controlled dangerous substances or which is used for the illegal manufacture, distribution, dispensing, storage or concealment of controlled dangerous substances or controlled paraphernalia."

In *Hunt v. Maryland*, 314 A2d 743 (Md. App. 1974), the defendant was convicted of maintenance of a common nuisance under § 286 (a) (5). In a search of the defendant's apartment, police had found the following: "In a Sears Roebuck bag the detectives found a cellophane bag containing heroin, several measuring spoons, 10 or 12 playing cards, and numerous rubber bands. In a brown paper bag they found 250 glassine bags of heroin, in 10 bundles, each consisting of 25 bags. They also found a quantity of empty glassine bags, and a small envelope of marijuana." 314 A2d at p. 744. Also found was a ledger which contained encoded information concerning the defendant's drug sales. The Maryland appellate court affirmed the defendant's conviction under § 286 (a) (5), notwithstanding the fact that it was based on evidence seized on a single day.

In so holding, the Maryland court found it necessary to distinguish an earlier decision in *Skinner v. State*, 293 A2d 828 (Md. App. 1972). In *Skinner*, the police, in the course of searching the car of a

narcotics addict for the fruits of a breaking and entering, found some narcotic paraphernalia and a small quantity of narcotics. The defendant was convicted of keeping his automobile as a common nuisance for the purpose of keeping or selling narcotic drugs in violation of § 286 (a) (5). The *Skinner* court reversed, holding that "common nuisance" under § 286 (a) (5) should be taken in its common-law meaning in terms of the continuing and recurring character of the offense, and that there was no evidence there from which a continuing or recurring nature of the possession could be inferred.

The court in *Hunt* clarified *Skinner* by stating that, "[w]e did not lay down a rule that because evidence is found only on a single occasion it cannot be sufficient to show a crime of a continuing nature." 314 A2d at p. 744. The court in *Skinner* held that other circumstances, such as the ones present in that case, although "short of proof of a similar offense on a different day . . . may . . . well be sufficient in a given case to prove continuing acts constituting a common nuisance." Id. at p. 745.

In summary, the court in *Hunt* referred to its holding in *Ward v. State*, 267 A2d 255, 261 (Md. App. 1970) that, " 'there is no particular extent of time prescribed during which the improper practices must continue or recur; *each case must be adjudged according to its own circumstances*. It is usually deemed sufficient if, when *the character of the culpable acts and the circumstances under which they were committed* are taken into account, it appears that they were repeated often enough to warrant an inference that the house was kept for the indulgence of such practices.' " (Emphasis in original.) 314 A2d at p. 745.

3. In *State v. Reis*, 430 A2d 749 (R.I. 1981), the Rhode Island Supreme Court, citing *Skinner v. Maryland*, supra, held that the evidence in *Reis* was insufficient to support the defendant's conviction for maintaining a narcotics nuisance under a version of the Uniform Controlled Substances Act similar to Maryland's. Section 21-28-4.06 (1) (a) of the General Laws of Rhode Island provides:

"Any store, shop, warehouse, building, vehicle, aircraft, vessel or any place whatever, which is used for the unlawful sale, use or keeping of a controlled substance shall be deemed a common nuisance.

"(1) Any person who violates this subsection with respect to:

"(a) Knowingly keeping and maintaining such a common nuisance as described in this section may be imprisoned for not more than five (5) years, and fined not more than One Thousand Dollars ($1,000), or both."

In *Reis*, there was no evidence showing that the defendant had made any narcotics sale at his residence, and what the search of his residence produced were some tablets which toxicologists later determined to contain the controlled substance Phencyclidine.

In *State v. Bulhoes*, 430 A2d 1274 (R.I. 1981), the court followed *Reis* by holding that the evidence was insufficient to support the defendant's conviction for maintaining a narcotics nuisance, where the state had only showed that a single sale had occurred at Bulhoes' residence.

Similarly, in *State v. Welch*, 441 A2d 539 (R.I. 1982), the court reversed the defendant's conviction where the record disclosed only one instance of the defendant's using his apartment to keep marijuana.

4. The court in *Wells v. Indiana*, 351 NE2d 43 (Ind. App. 1976), was dealing with Indiana's version of § 402 (a) (5) of the Uniform Controlled Substances Act. The Indiana version was identical to the Rhode Island version except that it contained an additional provision that, "[n]o person shall visit such a common nuisance." I.C. 1971, 35-24.1-4-3.5.

The defendant in *Wells* was convicted of visiting a common nuisance under this statute. The evidence showed that an undercover police officer had gone to the residence of one Dan Rex. The defendant Wells was present listening in on their conversation while the undercover officer and Rex negotiated a sale of phencyclidine. Rex produced a sample of the drug from his refrigerator. He and Wells then left the apartment in order to procure the desired quantity elsewhere. They later returned to Rex's apartment, and Rex and the officer concluded the sale, whereupon Rex spoke of other drugs he would be getting in later.

The Indiana appellate court did agree that the Indiana statute's use of the term "common nuisance" required a "showing of more than an isolated or casual instance of the prohibited activity." 351 NE2d at p. 46. However, the court affirmed the defendant's conviction under the statute for visiting a common nuisance, holding that from the evidence, "the court could reasonably have inferred beyond a reasonable doubt that the residence was being used for the prohibited purposes within the meaning of the statute." Id.

5. As previously stated, the appellants in this case were convicted under § 16-13-2 (b) of possession of less than an ounce of marijuana, which is a misdemeanor. They were not convicted of possession of any other drug. However, they were also convicted under § 16-13-42 (a) (5) of the felony offense of maintaining a dwelling house where controlled substances are kept.

It would be unreasonable and absurd to hold that the legislature intended to impose misdemeanor punishment under § 16-13-2 (b) for possession of less than an ounce of marijuana generally, but to impose felony punishment under § 16-13-42 (a) (5) solely on the ground that the marijuana was found in a "store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place." Therefore, we

decline to adopt this interpretation of the statute. See generally *Drake v. Thyer Mfg. Corp.*, 105 Ga. App. 20, 22 (123 SE2d 457) (1961).

We hold as follows. First, we hold that in order to support a conviction under § 16-13-42 (a) (5) for maintaining a residence or other structure or place used for keeping controlled substances, the evidence must show that one of the purposes for maintaining the structure was the keeping of the controlled substance; thus, the mere possession of limited quantities of a controlled substance within the residence or structure is insufficient to support a conviction under § 16-13-42 (a) (5). Second, we hold that in order to support a conviction under this statute for maintaining a residence or other structure or place used for selling controlled substances, the evidence must be sufficient to support a finding of something more than a single, isolated instance of the proscribed activity. Accord *White v. State*, 115 Ga. 570 (41 SE 986) (1902); *Linebarker v. State*, 74 Ga. App. 262 (39 SE2d 730) (1946) and cits.[1] Thirdly, we hold that in determining the sufficiency of the evidence in these regards, each case must be adjudged according to its own unique facts and circumstances, and there is no inflexible rule that evidence found only on a single occasion cannot be sufficient to show a crime of a continuing nature.

In material part, the evidence in the present case does show that scales, as well as plastic and other bags, were found in the appellants' bathroom. There was also marijuana found in two baggies in a wood stove in the appellants' living room/den. However, the amount of marijuana was only 2.7 grams. As previously stated, the appellants were not convicted of possessing any other drugs.[2] Nor was there any evidence of any drug use in the appellants' trailer. We conclude that under these circumstances, the evidence was not sufficient to warrant a finding that the appellants had knowingly engaged in a continuing course of conduct in which they had kept or maintained their trailer for use as a place for keeping or selling controlled substances in violation of the Georgia Controlled Substances Act.[3]

---

[1] *White* holds that a conviction for the offense of keeping a gaming house cannot stand upon proof of a single instance of gaming. *Linebarker* holds that, in order to convict a person of maintaining a lewd house, the state must prove the general reputation of the house or its inmates, or both, for lewdness.

[2] No question is raised as to whether, under these circumstances, the drug-possession offense is a lesser included offense within the offense of maintaining a place where controlled substances are stored.

[3] We do not reach the question concerning the sufficiency of the evidence to support the conviction for marijuana possession. It is argued that the evidence is insufficient to support this conviction under the equal-access rule and the cognate requirement that, in order to support a conviction, circumstantial evidence must exclude every reasonable hypothesis save that of guilt. See *Moreland v. State*, 133 Ga. App. 723 (212 SE2d 866) (1975); *Gee v. State*, 121 Ga. App. 41 (1) (172 SE2d 480) (1970).

Accordingly, the judgment of the Court of Appeals is reversed insofar as it sustains the appellants' conviction for maintaining a dwelling house where controlled substances are kept. The judgment of the Court of Appeals is affirmed insofar as it sustains the appellants' conviction for possession of less than one ounce of marijuana.

*Judgment affirmed in part and reversed in part. Hill, C. J., Clarke, Smith, Gregory and Bell, JJ., and Judge Clarence R. Vaughn, Jr., concur. Weltner, J., disqualified.*

DECIDED FEBRUARY 12, 1986.

*Garland, Nuckolls & Catts, Donald F. Samuel, James B. Langford, Martin & Young, John R. Martin,* for appellants.

*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney,* for appellee.