**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MAY 1, 2007

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

No. 130825

KEITH DEMOND THOMPSON,

Defendant-Appellee.

BEFORE THE ENTIRE BENCH

TAYLOR, C. J.

The issue in this case is whether MCL 333.7405(1)(d), which, among other things, forbids a person from knowingly "keep[ing] or maintain[ing]" a vehicle that is used for keeping or selling controlled substances, requires for a conviction that the prosecutor show, as was stated in *People v Griffin*, 235 Mich App 27, 32; 597 NW2d 176 (1999), that the defendant's actions occurred "continuously for an appreciable period."

We reject the *Griffin* Court construction of the statute and hold that while the statute precludes a conviction for an isolated incident without other evidence of continuity, the statute does not require the prosecution to show that a defendant's actions occurred "continuously for an appreciable period." Because

the Court of Appeals reversed defendant's conviction for maintaining a drug vehicle on the basis of the *Griffin* Court's construction of the statute, we vacate the judgment of the Court of Appeals and remand this case for reconsideration in light of the test we adopt today.

## I. FACTS AND PROCEEDINGS BELOW

Acting on a tip that defendant, who had the nickname of "Doughboy," was going to deliver some drugs at a parking lot of a restaurant, several law enforcement officers went to that location. A white van fitting the description of the vehicle "Doughboy" was expected to be driving entered and parked. A woman who appeared to have been waiting for the white van got out of a nearby red sedan and got into the van through its rear passenger door. A few minutes later she stepped out of the van, got back into the sedan, and started to back up the sedan in order to drive away. After the police stopped the sedan, they found four rocks of crack cocaine on the floorboard of the driver's side of the sedan, and a crack pipe and lighter were found on the floor near the backseat. A passenger hiding in the back of the sedan was found to be in possession of a small amount of marijuana.

As one of the officers approached the white van, defendant started getting out of the van with a cell phone in his hand and he turned toward the van so that the officer could not see his hands.[1] Another officer observed a man in the

---

[1] The prosecutor argued in his closing argument that defendant likely had cocaine in his possession or on the driver's seat and that he threw the drugs to the passenger and told him to get rid of them.

passenger seat of the van remove a piece of plastic from his mouth and toss it to the floor. This man was later taken to the hospital when, with increasingly slurred speech, he told an officer that he had swallowed some cocaine. While no drugs were found in the van or on the defendant, a $50 bill was found on the console of the van as well as an empty and ripped plastic bag that had been twisted in a manner typical of drug packaging. As for the woman who had entered the van, a detective testified that defendant said that the woman had owed him money and had paid him the $50 she owed him, and that he had then given her a $20 rock of crack cocaine.[2]

After a jury trial, defendant was convicted of delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(iv), and maintaining a drug vehicle, MCL 333.7405(1)(d).[3]

---

[2] Neither the passenger in the van, the woman in the sedan, nor the man in the back of the sedan testified at trial. Defendant, however, did testify. He admitted that his nickname was "Doughboy" but he denied selling any cocaine or making the statement the detective attributed to him. Although one officer indicated that the white van was the vehicle Doughboy usually drove, and defendant acknowledged driving the van, there was no evidence that defendant owned or leased the van.

[3] MCL 333.7405(1)(d) provides that a person

[s]hall not knowingly keep or maintain a store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances, or that is used for keeping or selling controlled substances in violation of this article.

3

The Court of Appeals affirmed the cocaine delivery conviction but reversed the conviction of maintaining a drug vehicle for the reason that there was insufficient evidence to support the conviction.[4] The Court of Appeals, relying on *Griffin*, summarized its holding as follows:

> The prosecution did not present evidence that defendant exercised authority or control over the white van *for an appreciable period of time* for the purposes of making the van available for selling or keeping drugs. The prosecution only presented evidence that defendant used the van for selling or keeping drugs on the night of April 9, 2003. Because defendant's conviction is not supported by sufficient evidence, we reverse defendant's conviction for maintaining a drug vehicle.[5]

The prosecutor filed an application for leave to appeal regarding the reversal of the conviction for maintaining a drug vehicle, and defendant filed an application for leave to file a cross-appeal regarding the affirmance of his delivery conviction. We granted the prosecutor's application for leave to appeal, but denied defendant's cross-application.[6]

We limited the grant of leave to appeal to the issues whether a defendant must "keep or maintain" a vehicle used for the purpose of selling a controlled substance "continuously for an appreciable period of time" as required by *Griffin, supra* at 32-33, in order to sustain a conviction under MCL 333.7405(1)(d) and

---

[4] Unpublished opinion per curiam, issued February 23, 2006 (Docket No. 258336).

[5] *Id.* at 2 (emphasis added).

[6] 475 Mich 907 (2006).

4

whether the evidence presented in this case was sufficient to sustain the defendant's conviction for keeping or maintaining a drug vehicle.

## II. STANDARD OF REVIEW

Whether MCL 333.7405(1)(d) requires the prosecutor to show that a defendant's actions occurred "continuously for an appreciable period" is a legal question, and we review legal questions de novo. *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999). Our fundamental obligation when interpreting statutes is "to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). Pursuant to MCL 8.3a, undefined statutory terms are to be given their plain and ordinary meaning, unless the undefined word or phrase is a term of art.[7] We consult a lay dictionary when defining common words or phrases that lack a unique legal meaning. *Robinson v Detroit*, 462 Mich 439, 456; 613 NW2d 307 (2000). This is because the common and approved usage of a nonlegal term is most likely to be found in a standard dictionary, not in a legal dictionary. *Horace v City of Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998).

---

[7] MCL 8.3a provides:

All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

### III. ANALYSIS OF THE STATUTE

We have not previously had the occasion to construe MCL 333.7405(1)(d). The Court of Appeals, however, has issued two published opinions addressing it in the context of a charge of maintaining a drug house. First, in *People v Bartlett*, 231 Mich App 139, 147; 585 NW2d 341 (1998), the panel, citing *Wahrer v State*, 901 P2d 442, 444 (Alas App, 1995), explained, "Alas Stat 11.71.040(a)(5), which mirrors MCL 333.7405(d); MSA 14.15(7405)(d), requires proof that the defendant knew that the premises were being used for continuing illegal drug activity . . . ." The Court rejected the defendant's claim that the jury instructions were erroneous when the trial court refused to tell the jury that "keep or maintain" required "general supervisory control" rather than merely control or "general control." Second, in *Griffin*, *supra*, another panel, without reference to *Bartlett*, considered a defendant's claim that the prosecution failed to present evidence sufficient to support his conviction of maintaining a drug house. The defendant did not contest the fact that the house at issue was a drug house; he only challenged whether there was evidence that he had kept or maintained it. The Court of Appeals determined that the prosecution had presented sufficient evidence. In its opinion the panel stated:

> We hold that to "keep or maintain" a drug house it is not necessary to own or reside at one, but simply to exercise authority or control over the property for purposes of making it available for keeping or selling proscribed drugs *and to do so continuously for an appreciable period.* [*Griffin, supra* at 32 (emphasis added).]

With this in mind, we turn to an analysis of the proper meaning of this phrase.

6

MCL 333.7405(1)(d) provides, as relevant here, that a person "[s]hall not knowingly keep or maintain a . . . vehicle . . . that is used for keeping or selling controlled substances in violation of this article." To determine the proper meaning of "keep or maintain" we first examine the statute itself. As with most statutory phrases, neither the individual word "keep" or "maintain" nor the phrase "keep or maintain" is defined in the statute.

*Random House Webster's College Dictionary* (1991) defines "keep" as "to *maintain* . . . , to cause to continue in a given position, state, course, or action." (Emphasis added.) It defines "maintain" as "to *keep* in existence or continuance." *Id*. (emphasis added).[8] "Keep" is defined as "to maintain" and "maintain" is defined as "to keep." Thus, it appears that the terms "keep" and "maintain" are synonyms. The dissent contends that these two terms must be given distinct meanings because they are separated by the word "or." We respectfully disagree. The word "keep" is commonly understood to mean "maintain" and the word "maintain" is commonly understood to mean "keep." We cannot define these terms in a manner that is inconsistent with how they are commonly understood just because they are separated by the word "or." In other words, the fact that these two terms are separated by the word "or" does not give us the authority to

---

[8] We note that the definitions found in Black's Law Dictionary are consistent with the definitions found in *Random House Webster's College Dictionary*. Black's Law Dictionary (6th ed) defines "keep" as "[t]o maintain continuously," and it defines "maintain" as "keep in existence or continuance."

7

give these two terms distinct meanings when they are commonly understood to have the same meaning. If two words have the same meaning, then we must give them the same meaning even where they are separated by the word "or."

As discussed above, "keep" is defined as "to cause to *continue*" and "maintain" is defined as "to keep in existence or *continuance*." *Id.* (emphasis added). The words "keep" and "maintain" both contain an element of "continuity." Even the dissent's definitions of these terms contain an element of "continuity." The dissent defines "maintain" as "to keep in an existing state." *Post* at 3, quoting *Webster's Ninth New Collegiate Dictionary* (1987). Keeping something in an existing state necessarily requires some degree of continuity. The dissent defines "keep" as "to retain in one's possession." *Post* at 4, quoting *Webster's Ninth New Collegiate Dictionary* (1987). "Retain" is defined as "to *continue* to use." *Random House Webster's College Dictionary* (1991) (emphasis added). Accordingly, some degree of "continuity" is an element even under the dissent's definition of "keep or maintain." Therefore, even assuming that the words "keep" and "maintain" have distinct meanings because they are separated by the word "or," the words "keep" and "maintain" both contain an element of continuity. That is, regardless of how one defines the words "keep" and "maintain," one cannot avoid a definition that requires some degree of continuity.

Finding that evidence of continuity is required to convict a person of "keeping or maintaining" a drug vehicle is consistent with this Court's decision in *People v Gastro*, 75 Mich 127; 42 NW 937 (1889). In *Gastro, supra* at 133-134,

8

this Court held that "[a] single act of lewdness or prostitution would not constitute the offense [of keeping and maintaining a house of ill fame] which the statute prohibits and punishes. . . ." Just as one does not keep and maintain a house of ill fame by engaging in an isolated act of lewdness or prostitution in the house, one does not keep or maintain a drug vehicle by engaging in an isolated act of selling drugs out of the vehicle.

The phrase "keep or maintain" implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence, such as perhaps a secret compartment or the like, that conduces to the same conclusion.

We note that the Legislature has twice indicated[9] that it desires MCL 333.7405(1)(d) to be interpreted in the same way similar acts in other states have been interpreted.

---

[9] First, MCL 333.7405(1)(d) was drawn from § 402(a)(5) of the Uniform Controlled Substances Act of 1970. 9 ULA, part IV, § 402(a)(g), p 682. MCL 333.7121(2) is applicable to the statute at issue and states: "This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among those states which enact laws similar to it."

Further, MCL 333.7405(1)(d) is part of the Public Health Code and § 1111(1) of this code provides: "This code is intended to be consistent with applicable federal and state law and shall be construed, when necessary, to achieve that consistency." MCL 333.1111(1).

The interpretation that we adopt today is dependent on the language of the statute. We do not interpret MCL 333.7121(2) and MCL 333.7405(1)(d) as

(continued…)

9

In states with statutes substantially similar to MCL 333.7405(1)(d) there is remarkable uniformity in giving meaning to "keep or maintain."[10]  One of the most encyclopedic discussions of the cases is found in *Dawson v State*, 894 P2d 672, 674 (Alas App, 1995), where the Alaska Court of Appeals, after canvassing the other states, concluded that in virtually all other states the requirement to "keep or maintain" requires "'some degree of continuity'" *id.* at 676 (citation omitted), and, fleshing that out, concluded that "courts have uniformly adopted the position that the prosecution is required to prove, and the jury to find, 'something more than a single, isolated instance of the proscribed activity.'"  *Id.*, quoting *Barnes v State*, 255 Ga 396, 402; 339 SE2d 229 (1986).  The Alaska court then summarized the prevailing law with respect to the keeping or maintaining element of drug-house statutes as follows:

> The state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but such use must be a substantial purpose of the users of the property, and the use must be continuous to some degree; incidental use of the property for keeping or distributing drugs or a single, isolated occurrence of drug-related activity will not suffice. The purpose [for] which a person uses property and whether such use is continuous are issues of fact to be decided on the totality of the

---

(…continued)

admonitions that we follow constructions placed on similar statutes in other jurisdictions if those rulings are inconsistent with the words used in our statutes.

[10] See, generally anno: *Validity, construction, and application of state or local law prohibiting maintenance of vehicle for purpose of keeping or selling controlled substances*, 31 ALR5th 760 (1995); anno: *Validity and construction of state statutes criminalizing the act of permitting real property to be used in connection with illegal drug activities*, 24 ALR5th 428 (1994).

evidence of each case; the state is not required to prove more than a single specific incident involving the keeping or distribution of drugs if other evidence of continuity exists. [*Dawson, supra* at 678-679.]

We find this interpretation persuasive and consistent with the interpretation that we have adopted after analyzing the words of the statute.[11]

With regard to the Court of Appeals *Griffin* test, which held that MCL 333.7405(1)(d) requires a showing that the defendant's actions occurred "continuously for an appreciable period," we believe it likely that the panel was attempting to draw from *Dawson* but mistakenly utilized only one part of the *Dawson* formulation, i.e., that the defendant's actions "must be continuous to some degree." *Dawson, supra* at 678-679. The difficulty with this truncated *Griffin* definition is that it unwarrantedly establishes a higher burden of proof than is justified by the statutory language. While the *Dawson* court's formulation, "continuous to some degree," would be satisfied by a showing of intermittent use, the *Griffin* Court's language, "continuously for an appreciable period," seems to suggest a longer period of use with few or no interruptions. Having said that, we

_____

[11] The prosecutor concedes that only one state, Delaware, has adopted a test that would allow a conviction upon proof of a single incident without more. *Priest v State*, 879 A2d 575 (Del, 2005). The Delaware court acknowledged that "most, if not all" other states with similar statutes reject the single-occurrence approach. *Id.* at 580 n 22. The Delaware court's approach is not persuasive because its decision was driven by policy and did not trace the words of the statute. Thus, as we have explained, we reject the Delaware construction and abide by the overwhelming majority view that proof of a single incident, without some other evidence of continuity, is not enough to establish a violation of MCL 333.7405(1)(d). We would not, as would Justice Corrigan, have Michigan join the

(continued…)

reiterate that "keep or maintain" is not synonymous with "use." Hence, if the evidence only shows that defendant used a vehicle to keep or deliver drugs on one occasion, and there is no other evidence of continuity, the evidence is insufficient to establish that defendant kept or maintained a drug vehicle in violation of MCL 333.7405(1)(d).

Having clarified the correct construction of MCL 333.7405(1)(d), and because the Court of Appeals analyzed defendant's claim regarding the evidence that he kept or maintained a drug vehicle under language we have rejected today, we find it appropriate to have the Court of Appeals determine in the first instance whether the evidence supporting defendant's conviction of maintaining a drug vehicle was sufficient in light of the interpretation of the statute set forth in our opinion today. The parties shall be allowed to file supplemental briefs.

IV. RESPONSE TO THE DISSENT

Justice Corrigan's partial dissent accuses us of giving offenders a free pass to use a vehicle to keep or sell drugs. We, of course, have done no such thing. Rather, we have simply determined, on the basis of the words of the statute and consistently with the overwhelming majority of other courts that have construed similar statutes, that the Legislature did not intend a conviction for knowingly keeping or maintaining a drug vehicle to obtain if there was only evidence of a

(…continued)
Delaware interpretation because we find the majority view accurately interprets our similarly worded statute.

12

single use.  Defendants who possess or deliver controlled substances are already subject to felony prosecution for possession or delivery independent of evidence of a vehicle's use.  There is no free pass.

## IV.  CONCLUSION

For the reasons set forth in this opinion, we vacate the judgment of the Court of Appeals and remand the case to the Court of Appeals for reconsideration of defendant's sufficiency of the evidence argument in light of this opinion.

Clifford W. Taylor
Michael F. Cavanagh
Elizabeth A. Weaver
Stephen J. Markman

KELLY, J.  I concurr in the result only.

Marilyn Kelly

13

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                     No. 130825

KEITH DEMOND THOMPSON,

      Defendant-Appellee.

_____

MARKMAN, J. (*concurring*).

I fully join the majority opinion but write separately only to address two provisions of law that are referenced in the majority's analysis, see *ante* at 9 n 9.

First, MCL 333.7121(2) states:

> This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among those states which enact laws similar to it.

Second, MCL 333.1111(1) states:

> This code is intended to be consistent with applicable federal and state law and shall be construed, when necessary, to achieve that consistency.

In light of these provisions, the majority opinion reasonably surveys the decisions of foreign courts that have interpreted the dispositive phrase in this case, "keep or maintain," but concludes that this Court does not construe §§ 7121(2) and 1111(1) as "admonitions that we follow constructions placed on similar statutes in other jurisdictions if those rulings are inconsistent with the words used in our statutes."

*Ante* at 9 n 9. I agree with this observation, but also note that if these provisions are, in fact, understood as "admonitions" to that effect, they would be beyond the authority of the Legislature.

This Court has said on innumerable occasions that it is obligated to defer to legislative judgments, even when such judgments are far afield from our own. This is because the legislative power is the power to undertake policy judgments and to set forth the law. Few judicial bodies have been more deferential toward legislative judgments than this Court.

However, when the Legislature purports to exercise its *legislative* power to dictate a rule of interpretation to this Court, as some might read §§ 7121(2) and 1111(1) as doing, the Legislature exceeds its authority and impinges on the *judicial* power, which is the power to interpret the law and say what that law means. It is this Court's responsibility to exercise the judicial power and to give reasonable meaning to the law by examining its language, structure, organization, and purpose. I do not believe that the Legislature can impose any different rules of interpretation upon this Court. Although on occasions I have acquiesced in the application of legislative rules of interpretation, I am increasingly of the view that such rules are not only incapable of coherent application, but that they trespass upon the authority of the judiciary.

Concerning §§ 7121(2) and 1111(1) in particular, there is certainly no harm, and perhaps value, in our Legislature encouraging this Court to assess the decisions of foreign courts that have interpreted "keep or maintain." However, the

limitation of such provisions is manifest in the following questions: Must this Court construe Michigan law to make it uniform with the laws of another state that have been misinterpreted? May this Court take into consideration dissimilarities between the law of Michigan and those of another state? How does this Court render "uniform" its interpretations if there are disagreements to this effect among the other states? Can "uniformity" or "consistency" in the interpretation of the law be practically achieved by the judiciaries of 50 sovereign jurisdictions?

If it is the Legislature's intent that the law be interpreted in a particular manner, the most reliable means of securing this result is for the Legislature to write the law in that manner. Although I do not doubt that an ancient law that has been given meaning over the centuries by courts of other jurisdictions can sometimes helpfully be referenced by the Legislature, in the final analysis, the constitutional rule must be that the Legislature either say clearly what it intends or else recognize that its less clearly stated intentions will be discerned through traditional methods of interpretation. A court cannot be obligated to say that the law states something other than what it states. This is no less true where a court of another jurisdiction has reached a contrary conclusion.

Stephen J. Markman

3

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                         No. 130825

KEITH DEMOND THOMPSON,

      Defendant-Appellee.

CORRIGAN, J. (*concurring in part and dissenting in part*).

I concur with the majority's ruling that MCL 333.7405(1)(d), which forbids a person from "keep[ing] or maintain[ing]" a vehicle that is used for keeping or selling controlled substances, does not require the prosecution to show that the defendant's actions occurred "continuously for an appreciable period," as stated in *People v Griffin*, 235 Mich App 27, 32; 597 NW2d 176 (1999).

I part company with the majority because it has violated a cardinal rule of statutory construction. Fundamentally, the majority has disregarded the Legislature's choice of the disjunctive term "or" ("keep or maintain") and effectively substituted the conjunction "and" ("keep and maintain"). It has achieved this override of the Legislature's choice by defining the common terms "keep" and "maintain" as synonymous when they also have different and distinct dictionary definitions.

I also dissent from the majority's holding that "the statute precludes a conviction for an isolated incident without other evidence of continuity . . . ." *Ante* at 1. By requiring "evidence of continuity" to prove the crime, the majority has essentially adopted the Court of Appeals holding in *Griffin* that the prosecution must show that the defendant's actions occurred "continuously for an appreciable period." It has merely deleted the "appreciable period" component of the continuity requirement. In my view, the majority continues to give offenders a "free pass." Instead, I would hold that evidence of an isolated incident of using a vehicle for keeping or selling controlled substances is sufficient to give rise to criminal liability under the unambiguous language of the statute if the offender keeps the vehicle by retaining it in his possession or power.

The first step we take in determining the Legislature's intent is to examine the plain language of the statute. *People v Anstey*, 476 Mich 436, 442-443; 719 NW2d 579 (2006). MCL 333.7405(1)(d) provides, in pertinent part, that a person "[s]hall not knowingly keep or maintain a . . . vehicle . . . that is used for keeping or selling controlled substances in violation of this article." The words "keep" and "maintain" are common words that can be given distinct meanings. Therefore, a lay dictionary should be used to define these words. See *Horace v City of Pontiac*, 456 Mich 744, 756; 757 NW2d 762 (1998) ("[W]hen considering a nonlegal word or phrase that is not defined within a statute, resort to a layman's dictionary such as *Webster's* is appropriate. This is because the common and approved usage of a nonlegal term is most likely to be found in a standard dictionary and not a legal

2

dictionary.") In ascertaining the common and ordinary meaning of a statutory term, a court should determine the meaning of the term at the time the statute was enacted, and may consult dictionaries from that time to determine that meaning. *Cain v Waste Mgt, Inc (After Remand)*, 472 Mich 236, 247; 697 NW2d 130 (2005).

The majority avoids the plain meaning of the text of the statute by declaring that the words "keep" and "maintain" are synonymous. The lay dictionary definition of "maintain" is "to keep in an existing state." *Webster's Ninth New Collegiate Dictionary* (1987), p 718.[1] The majority selects one definition of "keep" from the many available dictionary definitions, and declares that the word "keep" is synonymous with the word "maintain." But construing the terms as synonymous disregards the Legislature's use of the disjunctive term "or."[2] By using the disjunctive, the Legislature defined two separate ways of committing this crime.[3] In order to give meaning to the term the Legislature employed, the statute must be construed to give the words "keep" and "maintain" distinct meanings. To hold otherwise violates "'the fundamental rule of [statutory] construction that

---

[1] None of the other definitions of "maintain" is appropriate in the context of the statute.

[2] *Webster's Ninth New Collegiate Dictionary* (1987), p 829, offers the following relevant definition of "or": "used as a function word to indicate an alternative."

[3] Had the Legislature intended that the words "keep" and "maintain" have one meaning, it would not have used two words separated by "or," but instead would simply have used one word or the conjunctive word "and."

3

every word should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible.'" *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 714; 664 NW2d 193 (2003), quoting *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 364; 459 NW2d 279 (1990). By holding that the words "keep" and "maintain" are interchangeable, the majority fails to give meaning to the Legislature's clear intent to give variant meaning to the two words. Additionally, by using synonymous definitions of "keep" and "maintain," the majority renders one of these two words mere surplusage.[4]

The dictionary also defines "keep" as "to retain in one's possession or power." *Webster's Ninth New Collegiate Dictionary* (1987), p 658. This definition of "keep" is not synonymous with "maintain," is a commonly understood meaning of the word, and is appropriate in the context of the statute.

---

[4] This is one of the reasons why cases from sister states, including *Dawson v State*, 894 P2d 672 (Alas App, 1995), are not particularly helpful. These cases, like the majority in the instant case, fail to apply the plain language of the statute and fail to differentiate between the words "keep" and "maintain." Further, many cases from other states also require the prosecution to show that the defendant kept or maintained the vehicle or house *for the purpose* of keeping or selling controlled substances. See, e.g., *Barnes v State*, 255 Ga 396, 402; 339 SE2d 229 (1986) ("[I]n order to support a conviction under § 16-13-42 (a) (5) for maintaining a residence or other structure or place used for keeping controlled substances, the evidence must show that one of the purposes for maintaining the structure was the keeping of the controlled substance.") No language in our own statute requires the prosecution to prove that the vehicle was used *for the purpose* of keeping or selling controlled substances. The only mention of "purpose" in MCL 333.7405(1)(d) refers to the preceding clause of the statute providing that a person may not maintain a vehicle "that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances . . . ." That clause is not at issue in the instant case.

4

Thus, we should employ this definition in interpreting the statute. Using this definition of "keep," the majority correctly concludes that the Court of Appeals, in *Griffin, supra* at 32, added an element to the statutory language by requiring the prosecution to show that the defendant's actions occurred "continuously for an appreciable period." But the majority incorrectly holds that the word "keep" requires the prosecution to provide some evidence of continuity. I disagree that the word "keep," as defined above, "implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence . . . ." *Ante* at 9. In arguing that the above definition of "keep" requires continuity, the majority consults *Random House Webster's College Dictionary* (1991), which defines "retain" as "to continue to use." But *Webster's Ninth New Collegiate Dictionary* (1987) defines "retain" as "1 a: to keep in possession or use . . . 2: to hold secure or intact." *Id.* at 1006. Neither of these definitions from *Webster's Ninth New Collegiate Dictionary* (1987) requires continuity. Thus, I cannot agree with the majority that "keep" or "retain" requires continuity.

Under the above definition of "keep," the prosecution need only show that the defendant retained a drug vehicle in his possession or power. This could mean, for instance, that the defendant just began using the vehicle to keep drugs earlier that day. The focus should not be on how long the defendant kept drugs in the vehicle or sold the drugs from the vehicle; if a defendant uses a vehicle even one time for such a purpose, he has retained a drug vehicle in his possession, i.e., "kept" a drug vehicle. The focus should instead be on the degree of the

5

defendant's control or use of the vehicle in connection with the storage or selling of drugs. See *People v Bartlett*, 231 Mich App 139, 152; 585 NW2d 341 (1998) (a person may be deemed to keep or maintain a drug house if that person has the ability to exercise control or management over the house).

I further disagree with the majority's reliance on *People v Gastro*, 75 Mich 127; 42 NW 937 (1889), for the proposition that "keep or maintain" in MCL 333.7405(1)(d) requires more than an isolated incident. In *Gastro*, the defendant was convicted of unlawfully keeping a house of ill fame. In holding that a single act of prostitution will not always be sufficient to support a conviction under the statute, the *Gastro* Court did not even cite the statutory language, let alone engage in an analysis of the meaning of the word "keep."[5] Rather, the Court discussed the meaning of the statutory phrase "resorted to" and the purpose of the statute. *Id.* at 133. Further, MCL 333.7405(1)(d) is an almost verbatim adoption of a provision of the Uniform Controlled Substances Act (UCSA) effective at the time. It is doubtful that the Legislature considered a nineteenth century case involving a conviction for keeping a house of ill fame when it adopted the UCSA provision that prohibits keeping or maintaining a drug vehicle.

The majority also relies heavily on other states' interpretations of their own similar statutes. By doing so, the majority is distracted from the text of our own

_____

[5] In fact, the Court referred to the crime as "unlawfully keeping *and maintaining* a house of ill fame," *id.* at 128 (emphasis added), although the statute did not use the words "and maintaining." 1887 PA 34.

6

statute and led astray by other states' interpretations of their own similar statutes. The majority defends its reliance on cases from other states by pointing to two provisions of the Public Health Code that require other provisions of the code to be construed to achieve uniformity and consistency with other states. MCL 333.7121(2);[6] MCL 333.1111(1).[7] But these statutes do not require us to conform to other states' interpretations of statutes with different language when such interpretations would be contrary to the plain language of our own statute. Nor do they require us to adopt other states' erroneous interpretations of their own substantially similar statutes. If this were the case, we would simply do a "head count" of decisions from other states and follow the majority of states regardless of whether those decisions are correct. MCL 333.7121(1) or MCL 333.1111(1) does not require such a result.

Further, "[o]nly where the statutory language is ambiguous may a court properly go beyond the words of the statute to determine legislative intent." *People v Borchard-Ruhland*, 460 Mich 278, 284-285; 597 NW2d 1 (1999). If the language of the statute is unambiguous, this Court applies the statute as written, and judicial construction is neither necessary nor permitted. *Id.* at 284. MCL

---

[6] MCL 333.7121(2) provides: "This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among those states which enact laws similar to it."

[7] MCL 333.1111(1) provides: "This code is intended to be consistent with applicable federal and state law and shall be construed, when necessary, to achieve that consistency."

7

333.7121(1) and MCL 333.1111(1) govern judicial construction of statutes in the Public Health Code, which is not permitted when the statute at issue is unambiguous.[8]  The majority does not identify an ambiguity in MCL 333.7405(1)(d).  Because the language of MCL 333.7405(1)(d) is unambiguous, the above "uniformity" statutory provisions do not apply, and this Court must apply the plain language of MCL 333.7405(1)(d) as written, without regard to how other states have construed their similarly worded statutes.[9]

In addition to failing to apply the plain language of the statute, the majority creates practical problems by giving defendants a "free pass" from conviction for keeping or maintaining a drug vehicle.  The obvious purpose of the statute is to prevent the use of vehicles to transport or sell drugs.  That purpose is not served by exempting individual violations.  Under the majority opinion, as long as the suspect is careful not to carry any other drug paraphernalia or other indications of

---

[8] I offer no opinion regarding whether MCL 333.7121(2) or MCL 333.1111(1) violates the separation of powers doctrine by effectively instructing courts regarding how to exercise their judicial power to construe statutes.

[9] The "uniformity" statutory provisions of MCL 333.7121(1) and MCL 333.1111(1) are similar to statutory provisions requiring that a statute be broadly or liberally construed.  For example, MCL 333.1111(2) provides that the Public Health Code "shall be liberally construed for the protection of the health, safety, and welfare of the people of this state."  This type of statutory provision does not allow courts to interpret statutes in a manner inconsistent with the plain statutory language, but acts only as a legislative guide to help resolve ambiguous statutory language.  See *Paschke v Retool Industries*, 445 Mich 502, 511; 519 NW2d 441 (1994) ("Where the statutory language is clear, the courts should neither add nor detract from its provisions.  Nevertheless, *where ambiguity exists*, and judicial
(continued…)

8

continuity, the suspect need not fear that he will be convicted of keeping or maintaining a drug vehicle if caught for the first time. The majority opinion will encourage the police to allow the use of a vehicle to store or sell drugs until the officers decide that they have enough evidence to sustain a conviction under MCL 333.7401(1)(d) for continuous activity. The language of the statute makes clear that the Legislature did not intend such a result. Rather, the Legislature intended to permit the police to arrest a suspect for violating MCL 333.7405(1)(d) without fear that the arrest came too soon for them to accumulate evidence to support such a conviction.

By holding that the prosecution must show "evidence of continuity," the majority largely reiterates the Court of Appeals holding in *Griffin, supra* at 32, that the prosecution must show that the defendant's actions occurred "continuously for an appreciable period" but without the "appreciable period" component. The *Griffin* standard similarly requires evidence of continuity, so how is the majority's standard meaningfully different?[10] I question why this Court has granted leave to appeal and overruled *Griffin* just to reach a legal conclusion almost identical to the case it is overruling. The majority correctly recognizes that

(…continued)
interpretation is needed, the act should be liberally construed  . . . . [emphasis added].)

[10] The dictionary definition of "continuity" is, in pertinent part, as follows: "1. the state or quality of being continuous.  2. a continuous or connected whole." *Webster's Universal College Dictionary* (1997), p 176.

9

*Griffin* was wrongly decided and strikes the erroneous language of that decision, but then falls into the trap of repeating the *Griffin* panel's mistake.

Because evidence of an isolated incident of using a vehicle to keep or sell drugs is sufficient to support a conviction for keeping or maintaining a drug vehicle when the defendant retains the vehicle in his possession or power, and the prosecution clearly presented evidence that defendant kept the vehicle and used it for selling or keeping drugs, there was sufficient evidence to support defendant's conviction. I would vacate the judgment of the Court of Appeals and reinstate defendant's conviction for keeping or maintaining a drug vehicle under MCL 333.7405(1)(d).

Maura D. Corrigan
Robert P. Young, Jr.