12 P.3d 160 (2000)
103 Wash.App. 346
STATE of Washington, Respondent,
v.
Michael Ray CEGLOWSKI, Appellant.
No. 24936-7-II.
Court of Appeals of Washington, Division 2.
November 9, 2000.
*161 James Kieran Morgan, Longview, for Appellant.
Edwin Nick Norton, Cowlitz Co. Dep. Pros. Atty., Kelso, for Respondent.
BRIDGEWATER, J.
Michael Ray Ceglowski appeals his criminal conviction for knowingly maintaining or keeping a "drug house" for purposes of selling or storing drugs. We hold that the "keeping" and "maintaining" elements of the drug house statute contemplate a continuing pattern of criminal behavior beyond an isolated incident of possession or sale at the house or business. Therefore, we reverse and dismiss the conviction with prejudice because there was insufficient evidence to support his conviction.

FACTS
A group of police officers, including members of various city and county drug task forces, executed a search warrant on a bait and tackle shop. Ceglowski was in the back office. The police found a rolled up bill of U.S. currency, a small tray with traces of brown powder, and a small baggie with brown powder in the office desk drawer. The police also found a marijuana pipe, about $600 in currency, and an additional baggie containing brown powder in the desk. The police later identified the powder as 0.9 grams of methamphetamine between both baggies, with a street value totaling between $70-$150. The drug-detecting police dog alerted for narcotic odor on the currency found in the desk and in the store's cash register.
The police also found a small scale in the back office. The office safe contained about ten pages of "[p]ay and owe sheets," consistent with the type kept to record drug transactions. The business license and fish and wildlife license named Ceglowski as the license holder and owner of the store. Ceglowski had money in his pockets later identified by the police as the same money used for a controlled buy minutes before they executed the warrant.
The State charged Ceglowski with four counts of violations of the Uniform Controlled Substances Act, RCW Chapter 69.50. Counts I charged unlawful possession of methamphetamine with intent to deliver. Counts II and III charged Ceglowski with possession of two other controlled substances. The State did not charge Ceglowski with the delivery of a controlled substance it claimed occurred that produced the "buy" money found in his pockets.
Count IV alleged that Ceglowski "did knowingly keep and/or maintain a store... which was used for keeping and/or selling controlled substances," in violation of RCW 69.50.402(a)(6) ("drug house statute"). Clerk's Papers at 2. The jury found Ceglowski guilty only of violation of the drug house statute. The State dismissed Count II during the trial, after Ceglowski testified that *162 the drugs referred to in Count II had been prescribed to him following throat surgery. The jury acquitted Ceglowski of the two remaining counts of unlawful possession with intent to deliver and unlawful possession.
Ceglowski moved for an arrest of judgment, arguing that an incorrect title of the crime in the verdict form meant the jury convicted him of maintaining a store used for "selling" controlled substances when there was not substantial evidence. The trial court denied the motion.

ANALYSIS
Ceglowski assigns error to the trial court's denial of his motion for arrest of judgment under CrR 7.4(a)(3). Criminal Rule 7.4 provides that a defendant may bring a motion for arrest of judgment for "insufficiency of the proof of a material element of the crime." CrR 7.4(a)(3). Review of a trial court decision denying a motion for arrest of judgment requires the appellate court to engage in the same inquiry as the trial court. State v. Longshore, 141 Wash.2d 414, 5 P.3d 1256 (2000). "The evidence presented in a criminal trial is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in a light most favorable to the state, could find the essential elements of the charged crime beyond a reasonable doubt." Longshore, 141 Wash.2d at 420-21, 5 P.3d 1256 (citing State v. Bourne, 90 Wash.App. 963, 967-68, 954 P.2d 366 (1998)). See also State v. Delmarter, 94 Wash.2d 634, 637, 618 P.2d 99 (1980). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
The jury convicted Ceglowski on Count IV of knowingly keeping or maintaining a "drug house" in violation of RCW 69.50.402 ("drug house statute"). RCW 69.50.402(a)(6) provides that it is unlawful for a person:
knowingly to keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances, or which is used for keeping or selling them in violation of this chapter.
Ceglowski now challenges the sufficiency of the evidence. Ceglowski argues that, as a matter of law, possession of a small amount of a controlled substance is not enough to convict under the statute. The correct inquiry, however, is whether the totality of the evidence is sufficient to prove all the required elements. See State v. Fernandez, 89 Wash.App. 292, 300, 948 P.2d 872 (1997). We hold that the totality of the evidence must demonstrate more than a single isolated incident of illegal drug activity in order to prove that the defendant "maintains" the premises for keeping or selling a controlled substance in violation of the drug house statute.
Washington cases have not yet examined the issue of whether a single instance of sale or possession is sufficient to convict under our drug house statute. The requirement that the defendant "maintain" the premises, however, necessarily connotes a course of continuing conduct. Although "maintain" is not specifically defined under the drug house statute, "`[i]n the absence of a statutory definition of a word, we employ the plain and ordinary meaning of the word as found in a dictionary.'" State v. Batten, 95 Wash.App. 127, 129, 974 P.2d 879 (1999), aff'd, 140 Wash.2d 362, 997 P.2d 350 (2000) (citation omitted). Black's Law Dictionary defines "maintain" as "hold or preserve in any particular state or condition;" and "sustain" or "uphold." BLACK'S LAW DICTIONARY 953 (7th ed.1999). And the ordinary meaning of "maintain" encompasses this concept of continuing conduct: "to keep or keep up; continue in or with; carry on." WEBSTER'S NEW WORLD DICTIONARY, 854 (2d College Ed.1976). Furthermore, "knowingly maintaining" a place under the federal crack house statute, 21 U.S.C. 856(a)(1) (1986),[1] has been described to include acts evidencing "control, duration ... and continuity[.]" United States v. Clavis, 956 F.2d 1079, 1090-91 (11th Cir.), cert. denied, 504 U.S. 990, 112 *163 S.Ct. 2979, 119 L.Ed.2d 597 (1992). See also United States v. Morgan, 117 F.3d 849, 857 (5th Cir.) (holding that "maintain" connotes a degree of continuity and duration that is not an attribute of mere possession of the premises where drugs are found), cert. denied, 522 U.S. 987, 118 S.Ct. 454, 139 L.Ed.2d 389 and 522 U.S. 1035, 118 S.Ct. 641, 139 L.Ed.2d 619 (1997). Moreover, federal courts have held that this element requires proof that a substantial purpose for maintaining the premises was to conduct the drug activity. See, e.g., Clavis, 956 F.2d at 1093-94 (holding that evidence that defendant had lived on the premises where drugs were found five days after his arrest, and that he had distributed cocaine elsewhere was insufficient to evidence that he maintained the premises for the purpose of distributing drugs); United States v. Verners, 53 F.3d 291, 296 (10th Cir.1995) (holding that evidence supported conclusion that defendant's primary purpose in maintaining her house was as a residence for her and her daughters, not for illegal drug activity). Consequently, under the federal statute, "`[t]he casual' drug user does not run afoul of this prohibition because he does not maintain his house for the purpose of using drugs but rather for the purpose of residence, the consumption of drugs therein being merely incidental to that purpose." Verners, 53 F.3d at 296 (quoting United States v. Lancaster, 968 F.2d 1250, 1253 (D.C.Cir.1992)).
Additionally, Ceglowski cites two cases from other jurisdictions to support his proposition that sporadic or isolated incidents of drug use are not enough to prove criminal conduct under the drug house statute. In People v. Fiedler, the New York court held that evidence that parents allowed their children to smoke marijuana in their home was insufficient to support the parents' conviction under a criminal nuisance statute, which made it a crime to "maintain[] a place where any narcotic drug is unlawfully used." Fiedler, 31 N.Y.2d 176, 335 N.Y.S.2d 377, 286 N.E.2d 878, 879 (1972). The court examined New York case law to determine that "maintain" means more than knowledge of existence of the nuisance, but also includes "preserving and continuing its existence." Fiedler, 335 N.Y.S.2d 377, 286 N.E.2d at 880 (citations omitted). In Shrader v. State, the Nevada supreme court reversed a conviction under a drug house statute because, as a matter of law, a few cited incidents of marijuana use were too isolated to establish that the defendant "opened or maintained his apartment for the purpose of distributing or using drugs." Shrader, 101 Nev. 499, 706 P.2d 834, 838-39 (1985). Shrader relied upon Fiedler and a broad interpretation of "open" and "maintains" under the Nevada drug house statute. Shrader, 706 P.2d at 838.
RCW 69.50.402 derives from the Uniform Controlled Substances Act. 9 U.L.A. § 402 (1970). In other states that have adopted drug house statutes modeled after the Uniform Act, the courts have held that more than a single isolated instance of drug activity is required to support a conviction. See, e.g., Barnes v. State, 255 Ga. 396, 339 S.E.2d 229, 234 (1986); Howard v. State, 1991 OK CR 76, 815 P.2d 679, 683 (1991); Hunt v. State, 20 Md.App. 164, 314 A.2d 743, 745 (1974) (holding drug activity must be of "continuing and recurring" character); People v. Holland, 158 Cal.App.2d 583, 322 P.2d 983, 986 (1958) (holding there must be "some purpose of continuity in the use of the place for the proscribed illegal conduct").
These out of state authorities persuasively support the conclusion that the keeping or maintaining element of our drug house statute contemplates a continuing pattern of criminal behavior, beyond an isolated incident of possession or sale at a defendant's business. The statute was clearly designed to do more than punish mere possession. Therefore, we hold that to constitute the crime of maintaining a premises for the purpose of unlawfully keeping or selling controlled substances there must be: (1) some evidence that the drug activity is of a continuing and recurring character; and (2) that a substantial purpose of maintaining the premises is for the illegal drug activity. Barnes, 339 S.E.2d at 234. This rule does not mean that a small quantity of drugs or evidence found on only "a single occasion cannot be sufficient to show a crime of a continuing nature." Barnes, 339 S.E.2d at 234. The evidence could be sufficient if the totality of the evidence proves that the defendant "maintained" the premises for selling or keeping controlled substances.
*164 Here, taking the evidence in the light most favorable to the State, the evidence does not support the reasonable inference that the keeping or selling drugs was a recurring activity at the business. Although the discovery of the informant's cash in Ceglowski's pocket supports the reasonable inference that a single drug sale was conducted in the shop, the drugs allegedly purchased at the buy were not introduced at trial. And there was no evidence that any other drug sale had occurred at the business. The only evidence of possible continuing sale activity was the handwritten "pay and owe" sheets, which may or may not have been drug related. These records, although consistent with the sale of drugs, do not support a reasonable inference that other sales continually took place on the premises.
Neither does the evidence support the reasonable inference that selling drugs was a substantial purpose for maintaining the bait and tackle shop. There was evidence Ceglowski possessed methamphetamine on the premises, because of the 0.9 grams found in his office desk. But we do not find evidence that Ceglowski maintained the business for the purpose of keeping drugs or for selling them. First, Ceglowski was not convicted of possession with intent to deliver; he was acquitted. Second, neither does the existence of baggies and a small scale at a bait and tackle shop lead to a reasonable inference that drugs were kept or sold there. Mere possession of 0.9 grams of methamphetamine, with little else to demonstrate a continuing course of conduct, is not enough evidence by which a rational trier of fact could find that Ceglowski maintained a shop that was used for keeping or selling drugs.
We reverse Ceglowski's conviction for insufficient evidence with instructions to the trial court to dismiss the charge with prejudice. State v. Hickman, 135 Wash.2d 97, 103, 954 P.2d 900 (1998).
Reversed.
MORGAN, P.J., and PENOYAR, J.P.T., concur.
NOTES
[1] 21 U.S.C. § 856(a)(1) makes it unlawful to "knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance[.]"