# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68475-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | ORDER GRANTING |
| v. | ) | MOTION FOR |
| | ) | RECONSIDERATION |
| RAYMOND MAK, | ) | AND AMENDING OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

The appellant, Raymond Mak, having filed a motion for reconsideration of the opinion filed August 19, 2013, and a panel of the court having determined that the motion should be granted; now, therefore, it is hereby

**ORDERED** that the motion for reconsideration is granted. It is further

**ORDERED** that the opinion be amended as follows:

**DELETE** the first sentence of the last paragraph of the opinion, on page 11, which reads:

Finally, relying on State v. Miller, 131 Wn.2d 78, 929 P.2d 372 (1997), Mak claims that the to convict instruction for count II was in error because it did not allege the involvement of more than two people.

**REPLACE** that sentence with the following sentence:

Relying on State v. Miller, 131 Wn.2d 78, 929 P.2d 372 (1997), Mak claims that the to convict instruction for count II was in

error because it did not allege the involvement of more than two people.

**DELETE** the last paragraph of the opinion, on page 12, which reads:

We affirm.

**REPLACE** that paragraph with the following paragraphs:

Finally, Mak argues that, because counts I and II were charged under chapter 69.50 RCW, the only available aggravating factors were those found in RCW 69.50.435, and the sentencing court could not impose an exceptional sentence based on RCW 9.94A.535(3)(e). Mak contends that, pursuant to State v. Mendoza, 63 Wn. App. 373, 819 P.2d 387 (1991), In re Pers. Restraint of Acron, 122 Wn. App. 886, 95 P.3d 1272 (2004), and In re Pers. Restraint of Hopkins, 137 Wn.2d 897, 976 P.2d 616 (1999), he is entitled to be resentenced absent the aggravating factor in RCW 9.94A.535(3)(e).

In Mendoza, the defendant was convicted of conspiracy to deliver a controlled substance pursuant to RCW 69.50.407, a crime that was not ranked in the seriousness table. 63 Wn. App. at 377. In imposing Mendoza's sentence, the sentencing court relied on former RCW 9.94A.410 (1986), which provided that the seriousness levels for anticipatory offenses charged under chapter 9A.28 RCW were to be determined by the seriousness levels for the                                          completed

offenses.https://web2.westlaw.com/result/%09%09%09%09%09%0 9 - B00221991185342 Id. at 376 n.1. Because Mendoza was not convicted under chapter 9A.28 RCW, the sentencing court erred in applying RCW 9.94A.410. Id. at at 377. In Acron, the defendant was convicted of two counts of indecent liberties under RCW 9A.44.100(1)(d), involving offenses by health care providers against their patients. 122 Wn. App. at 887. At the time the seriousness grid did not include this particular means of committing indecent liberties. Id. at 888-89. As a result, it was error for the sentencing court to apply the seriousness level for other forms of indecent liberties. Id. at 895. In Hopkins, the defendant was convicted of solicitation to deliver cocaine pursuant to RCW 9A.28.030, for which the statutory maximum sentence was 60 months. 137 Wn.2d at 899. The sentencing court imposed an 81 month sentence, relying on RCW 69.50.408, which doubles the statutory maximum when the defendant has been "'convicted of a second or subsequent offense under this chapter.'" Id. at 899-900 (emphasis added). Because solicitation to deliver cocaine was not a crime under chapter 69.50 RCW, the doubling provision of RCW 69.50.408 could not apply. Id. at 904.

None of these cases support Mak's argument. RCW 9.94A.535(3)(e) allows a sentencing court to impose an exceptional sentence when a jury finds that "[t]he current offense was a major

<u>violation of the Uniform Controlled Substances Act, chapter 69.50</u>

<u>RCW (VUCSA</u>." (Emphasis added.) It is clear from the language of the statute that RCW 9.94A.535(3)(e) applies to offenses charged under chapter 69.50 RCW. Consequently, the sentencing court properly imposed Mak's sentence pursuant to RCW 9.94A.535.

We affirm.

DATED this _____ day of September, 2013.

WE CONCUR:

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| | ) No. 68475-2-I |
| Respondent, | ) |
| | ) DIVISION ONE |
| v. | ) |
| | ) |
| RAYMOND MAK, | ) UNPUBLISHED OPINION |
| | ) |
| Appellant. | ) FILED: August 19, 2013 |
| | ) |

APPELWICK, J. — Mak argues that sufficient evidence did not support both of the alternative means of committing possession with intent to manufacture or deliver a controlled substance or that he was maintaining a vehicle for drug trafficking. Possession with intent to manufacture or deliver a controlled substance is not an alternative means crime and the evidence is sufficient to support the conviction. The evidence is sufficient also to show that Mak was maintaining a vehicle for drug trafficking. We affirm.

## FACTS

Seim DeLaCruz, an agent with the United States Border Patrol, works undercover with the Skagit County Interlocal Drug Enforcement Unit (SCIDEU) attempting to dismantle drug trafficking organizations operating out of Skagit County.

In January 2011, Agent DeLaCruz learned that an individual known as "Jeff" was looking for a connection from whom to purchase large amounts of cocaine. Agent DeLaCruz contacted "Jeff," later identified as Jeffrey Huynh, and represented himself as a high-volume cocaine dealer. Agent DeLaCruz texted Huynh a photograph of two kilogram-size bricks of cocaine, samples of the cocaine that Agent DeLaCruz was offering to sell to Huynh or his associates. Agent DeLaCruz met with Huynh in person in February to show him the two bricks. One of the bricks, stamped with a symbol of a donkey and referred to as "Burro," was high-quality and pure. The other brick, stamped "2010," had been "stepped on," meaning that it had been adulterated with additives to increase its volume. According to Agent DeLaCruz, the "2010" was half as pure as the "Burro."

Over the next few months, Huynh contacted Agent DeLaCruz on multiple occasions to set up deals, but was not able to produce a buyer. However, in May Huynh told Agent DeLaCruz that a buyer, later identified as Raymond Mak, was interested in buying two kilograms of the "2010" for $42,000. Huynh wanted $2,000 for his role in arranging the deal. Huynh and Agent DeLaCruz continued to exchange phone calls and texts regarding a date and location, and on May 20, Huynh informed Agent DeLaCruz that he and Mak were en route from Seattle to make the purchase. Agent DeLaCruz arranged to meet Huynh and Mak at the El Gitano restaurant in Mount Vernon. Prior to the meeting, Agent DeLaCruz placed the two bricks of cocaine he had previously shown Huynh into a black bag and placed the bag in the trunk of his car.

When Agent DeLaCruz arrived at the restaurant, Huynh introduced him to Mak and another man, Jiayin Lin. Huynh asked Agent DeLaCruz to step outside the restaurant with him. Huynh proceeded to discuss arrangements for future deals with Agent DeLaCruz, proposing various code words for different amounts of cocaine and using Eastern Standard Time for meet up times. Huynh and Agent DeLaCruz then returned to Mak and Lin inside the restaurant. Agent DeLaCruz insisted on seeing the money. Huynh and Mak had Agent DeLaCruz follow them to the bathroom, where Huynh displayed a large bundle of $100 bills.

Mak said that he wanted to see the cocaine. Agent DeLaCruz had Mak follow him to the parking lot in the back of the restaurant, where he opened the trunk of his car. Mak picked up one of the bricks, examined it, and put it back. Mak then told Agent DeLaCruz that he wanted to purchase ten more kilograms of cocaine from him within the next week or two. He stated that he and his brother were "into everything" and "moved everything . . . drugs, and all types of drugs." Mak gave Agent DeLaCruz his number so that they could arrange deals without involving Huynh. As Agent DeLaCruz and Mak headed back to the restaurant, Mak pointed out his car, a BMW, in the front parking lot. Agent DeLaCruz and Mak returned to the table with Huynh and Lin, where they agreed to make the deal. Agent DeLaCruz, Mak, and Huynh exited the restaurant again and entered Agent DeLaCruz's car. Lin served as a lookout. Huynh gave Agent DeLaCruz the money. Agent DeLaCruz opened the trunk and Mak got out of the car, took the cocaine, closed the trunk, and walked

-3-

away. Agent DeLaCruz gave Huynh the $2,000 he requested for facilitating the transaction.

Mak got into his own car and drove away. Police officers pulled Mak over and arrested him a few blocks away. In a search of Mak's car, police found the cocaine Mak took from Agent DeLaCruz. Police also recovered a total of four cell phones from the car and from Mak's person. Items of dominion and control in the vehicle showed that Mak was the vehicle's owner. The Washington State Patrol Crime Lab confirmed that the two bricks found in Mak's car were cocaine.

The State charged Mak with possession with intent to manufacture or deliver a controlled substance – cocaine (count I), conspiracy to possess with intent to manufacture or deliver a controlled substance – cocaine (count II), and maintaining a vehicle for drug trafficking (count III). The State also filed a notice of intent to submit to the jury an aggravating factor in support of an exceptional sentence above the standard range, namely that counts I and II were "major violations" of the Uniform Controlled Substances Act, ch. 69.50 RCW, pursuant to RCW 9.94A.535(3)(e).

Prior to trial, Mak moved to sever his trial from Huynh's. The trial court denied Mak's motion and Mak and Huynh were tried together.

A jury convicted Mak on all counts, and found by special verdict that counts I and II constituted a major violation of the Uniform Controlled Substances Act. The sentencing court imposed an exceptional sentence of 96 months on counts I and II and a standard range sentence of 20 months on count III, to run concurrently. Mak appeals.

DISCUSSION

I.  Alternative Means

Criminal defendants have a right to an expressly unanimous jury verdict. WASH. CONST. art I, § 21; State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). A general verdict of guilty on a crime that can be committed by alternative means will be upheld only if sufficient evidence supports each means. Id. at 708.

The Washington Uniform Controlled Substances Act, chapter 69.50 RCW, provides that it is unlawful for any person to "manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(1). Mak argues that the phrase "possess with intent to manufacture or deliver" provides two alternative means of committing the crime: (1) possessing with intent to manufacture, and (2) possessing with intent to deliver. He argues that the State failed to present sufficient evidence to show he had the intent to manufacture the cocaine.

However, this court held on direct appeal in Huynh's case that the phrase "possess with intent to manufacture or deliver" does not constitute two separate means of committing the crime. State v. Huynh, No. 68369-1-I, slip op. at 8 (Wash Ct. App. Aug. 12, 2013). Because Mak does not dispute that the State's evidence was sufficient to prove possession with intent to deliver, we need not address his argument that the evidence was insufficient to prove possession with intent to manufacture.

## II.  Maintaining a Vehicle for Drug Trafficking

The State charged Mak with maintaining a vehicle for drug trafficking in violation of RCW 69.50.402(1)(f). The statute makes it unlawful to knowingly:

> keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances, or which is used for keeping or selling them in violation of this chapter.

Id. The crime requires "some evidence that the drug activity was continuing and recurring in nature, and that a substantial purpose in the maintenance of the vehicle was to conduct illegal drug activities." State v. Marin, 150 Wn. App. 434, 438-39, 208 P.3d 1184 (2009). This rule does not mean that "a small quantity of drugs or evidence found on only 'a single occasion cannot be sufficient to show a crime of a continuing nature.'" State v. Ceglowski, 103 Wn. App. 346, 353, 12 P.3d 160 (2000) (quoting Barnes v. State, 255 GA. 396, 339 S.E.2d 229, 234 (1986)). However, "[t]he statute was clearly designed to do more than punish mere possession." Id. at 352.

Mak argues that there was insufficient evidence to support the conviction. We disagree. Evidence is sufficient to support a conviction if, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, a rational trier of fact could find each element of the crime proven beyond a reasonable doubt. State v. Hosier, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). We consider "whether the totality of the evidence is sufficient to prove all the required elements." Ceglowski, 103 Wn. App. at 350. That test is satisfied here.

The evidence showed Mak owned the vehicle. He was in possession of the vehicle at the time of taking possession of the drugs, and at the time of arrest the drugs were in the vehicle. The volume of the drugs was large. He was convicted of possession with intent to deliver or manufacture, not mere possession. Though this was a single transaction with the undercover officers, the evidence showed that Mak's drug activities were of a "'continuing and recurring'" nature. Id. at 352-53 (quoting Hunt v. State, 20 Md. app. 164, 314 A.2d 743, 745 (1974)). Mak told Agent DeLaCruz of his plan to continue purchasing cocaine in large quantities. This is substantial evidence of maintaining the vehicle to conduct illegal drug activities. It is consistent with Marin and distinguishable from Ceglowski.

Mak argues there is no evidence that his BMW was used for more than a single isolated incident of illegal drug activity. Police did not find drugs in the car other than the two bricks Mak purchased from Agent DeLaCruz, nor did they find money or drug paraphernalia. Furthermore, Mak told Agent DeLaCruz that for future drug transactions he would be willing to pay Agent DeLaCruz an additional fee to deliver the drugs to Seattle rather than coming to get them himself. However, this evidence does not negate the sufficiency of the other evidence. The evidence, in the light most favorable to the State, is sufficient to sustain Mak's conviction.

III. Statement of Additional Grounds

Mak raises several issues in his pro se statement of additional grounds, none of which has merit.

No. 68475-2-I/8

Mak first argues that the evidence was insufficient to support the special verdict that counts I and II were a "major violation" of the Uniform Controlled Substances Act, because the State did not define "substantially larger than personal use."[1] As a result, Mak contends, the sentencing court abused its discretion when it imposed an exceptional sentence based on the jury's special verdict. But, the State introduced evidence that two kilograms of cocaine represented enough for 16,000 doses for individual users, and that number would be significantly higher if Mak further "stepped on" the cocaine. This was clearly an amount substantially larger than personal use.

---

[1] RCW 9.94A.535(3)(e) provides that a sentencing court may impose an exceptional sentence for an offense if a jury finds that the offense was a "major violation" of the Uniform Controlled Substances Act. The presence of any of the following may identify an offense as a major violation:

(i) The current offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so;
(ii) The current offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use;
(iii) The current offense involved the manufacture of controlled substances for use by other parties;
(iv) The circumstances of the current offense reveal the offender to have occupied a high position in the drug distribution hierarchy;
(v) The current offense involved a high degree of sophistication or planning, occurred over a lengthy period of time, or involved a broad geographic area of disbursement; or
(vi) The offender used his or her position or status to facilitate the commission of the current offense, including positions of trust, confidence or fiduciary responsibility (e.g., pharmacist, physician, or other medical professional).

Id.

-8-

Mak next alleges that his sentence was excessive, because he believed he was buying "kief," a marijuana derivative, rather than cocaine. Mak's claim is not supported by the record. Mak examined the cocaine before giving Agent DeLaCruz the money. Furthermore, the State presented evidence that Mak referred to the number of kilograms he wanted to purchase from Agent DeLaCruz in the future. An officer testified that "[t]he only thing sold by kilogram" is cocaine.

Mak argues that the State violated his right to equal protection under the law when it offered him a plea deal involving 60 months incarceration but offered his codefendant Lin only 18 months. Given that this argument relies upon matters outside the record, it is not reviewable on direct appeal. State v. McFarland, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995). Mak's claims of prosecutorial vindictiveness and judicial bias are similarly unsupported by the record before us.

Mak contends that the trial court erred when it denied his motion to sever his trial from that of Huynh. We review a trial court's denial of a motion to sever for manifest abuse of discretion. State v. Medina, 112 Wn. App. 40, 52, 48 P.3d 1005 (2002). To show that the trial court abused its discretion in denying severance, "the defendant must be able to point to specific prejudice." State v. Bythrow, 114 Wn.2d 713, 720, 790 P.2d 154 (1990). Mak does not demonstrate that he suffered prejudice. Mak alleges that Huynh's attorney prevented his own attorney from admitting recorded conversations between Huynh and Agent DeLaCruz that Mak claims would exonerate him. But, Mak provides no evidence as to the contents of

these recordings, nor does Mak explain how Huynh's statements to Agent DeLaCruz would not be excluded as hearsay in a separate trial.

Mak contends that his convictions on count I and count II violate double jeopardy, because they arose from the same incident. But, it is well-established that the same series of acts can support a conspiracy conviction and a conviction for a completed crime without violating a defendant's right to be free from double jeopardy. See, e.g., Iannelli v. United States, 420 U.S. 770, 777-78, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975) ("[S]eparate sentences can be imposed for the conspiracy to do an act and for the subsequent accomplishment of that end.").

Mak appears to argue that he was a victim of "entrapment." "Entrapment occurs only where the criminal design originates in the mind of the police officer or informer . . . and the accused is lured or induced into committing a crime he had no intention of committing." State v. Waggoner, 80 Wn.2d 7, 10, 490 P.2d 1308 (1971). Entrapment is a statutory defense, and a defendant must present sufficient evidence to warrant an instruction on entrapment before it may be given. RCW 9A.16.070; State v. Trujillo, 75 Wn. App. 913, 917, 883 P.2d 329 (1994). Mak presented no such evidence nor did he request an entrapment instruction, and the claim is therefore waived. State v. Scott, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988).

Mak argues that the State failed to establish a chain of custody for the two kilograms of cocaine offered into evidence. But, Mak did not challenge the chain of custody at trial and cannot raise this challenge for the first time on appeal. See State

-10-

v. Boast, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976) (party may only assign error in on specific ground of evidentiary objection made at trial).

Mak argues that the deputy prosecutor committed misconduct by using the phrase "drug world." To prevail on a claim of prosecutorial misconduct, a defendant must show both improper conduct and prejudicial effect. State v. Roberts, 142 Wn.2d 471, 533, 14 P.3d 713 (2000). If the defendant failed to object to alleged misconduct at trial, appellate review is only appropriate if the prosecutorial misconduct is so "flagrant and ill intentioned" that no curative instruction could have obviated the prejudice engendered by the misconduct. State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). Mak did not object at any time to the deputy prosecutor's use of the term "drug world," so he must show that the prejudice was incurable. He fails to do so.

Mak claims that the State's evidence was insufficient to convict him on counts I and II. To the extent that Mak claims that the State did not prove he intended to purchase cocaine, we have already rejected this argument. And, we need not address Mak's claims that the State did not prove his intent was to manufacture the cocaine, as the State introduced sufficient evidence that Mak's intent was to deliver the cocaine.

Finally, relying on State v. Miller, 131 Wn.2d 78, 929 P.2d 372 (1997), Mak claims that the to convict instruction for count II was in error because it did not allege the involvement of more than two people. But, Miller involved a conviction for conspiracy to deliver a controlled substance, which requires the existence of a third

person, not conspiracy to possess with intent to deliver or manufacture, which does not. Id. at 91. Miller is inapposite and Mak's claim fails.

We affirm.

_Applewick, J._

WE CONCUR:

_Schindler, J._          _Cox, J._