IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33944-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RODNEY CLIFFORD MENARD, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — In response to respondent Rodney Menard's pretrial *Knapstad* motion, the trial court dismissed the charge of maintaining a drug dwelling. *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986). The State appeals. We reverse and remand for further proceedings.

## FACTS

We outline the facts in a radiance most favorable to the State. Respondent Rodney Menard owns and lives at 810 N. 26th Avenue, in Yakima, a home where he has resided since the age of five. Menard rented rooms to five individuals, occasionally received methamphetamine from tenants as rent payment, consumed twenty dollars' worth of methamphetamine per day, and possessed drug pipes. Menard knew his tenants imbibed

methamphetamine, but denied knowledge of the use of his home for methamphetamine sales.

The Drug Enforcement Agency (DEA) received numerous complaints regarding recurrent drug traffic to and from 810 N. 26th Avenue. On July 15, 2015, a DEA confidential informant purchased approximately a gram of methamphetamine at Rodney Menard's home.

On July 23, 2015, at 6:45 a.m., the DEA Task Force conducted a narcotics search of Yakima's 810 N. 26th Avenue. The front door was unlocked. Rodney Menard and thirteen other individuals were present when law enforcement officers entered the residence. In a basement bedroom, a lady rested on a small couch with a bag of methamphetamine next to her pillow.

Law enforcement officers spoke with Rodney Menard and other denizens of the home. When asked if people who visit take drugs, Menard answered: "most people do." Clerk's Papers (CP) at 24. Two renters informed the officers that ten to fifteen different people came daily to the house to use drugs. Menard claimed he unsuccessfully tried to end the heavy traffic at the house. Officers confiscated drug paraphernalia and 25.5 grams of drugs inside the home.

## PROCEDURE

The State of Washington charged Rodney Menard with maintaining a drug dwelling under RCW 69.50.402. Menard filed a *Knapstad* motion. Menard argued that

2

any drug-related activity at his house was incidental to the primary purpose of the residence and the statute proscribed his conduct only if the drug activity constituted the residence's major purpose. The State responded that Menard knew drug users employed his house for the purpose of enjoying controlled substances. In turn, the State contended that drug activity, for purposes of the crime, need only be a substantial purpose, not the primary one. The trial court granted Menard's motion to dismiss.

## LAW AND ANALYSIS

Under Washington law, a defendant may present a pretrial motion to dismiss a charge and challenge the State's ability to prove all of the elements of the crime. *State v. Montano*, 169 Wn.2d 872, 876, 239 P.3d 360 (2010). Judges and lawyers refer to such a motion as a *Knapstad* motion from the leading decision of *State v. Knapstad*, 107 Wn.2d 346 (1986). The trial court has inherent power to dismiss a charge when the undisputed facts are insufficient to support a finding of guilt. *Knapstad*, 107 Wn.2d at 351. The court must decide whether the facts that the State relies on, as a matter of law, establish a prima facie case of guilt. *Knapstad*, 107 Wn.2d at 356-57. We review de novo a trial court's dismissal of a criminal charge under *Knapstad*. *State v. Conte*, 159 Wn.2d 797, 803, 154 P.3d 194 (2007).

The parties renew their respective arguments on appeal. Rodney Menard contends that he may be found guilty of maintaining a drug dwelling only if he maintains the home for the principal purpose of facilitating the use of controlled substances. We disagree.

3

RCW 69.50.402(1), known colloquially as the drug house statute, declares:

It is unlawful for any person:

. . . .

(f) Knowingly to keep or maintain any . . . dwelling, building . . . or other structure or place, which is resorted to by persons using controlled substances in violation of this chapter *for the purpose of using these substances*, or which is used for keeping or selling them in violation of this chapter.

(Emphasis added.) Note that the statute refers to the purpose under which the drug users employ the residence, not the owner's purpose for the residence. The statute does not insert the word "primary" or any other term similar in meaning.

To convict under RCW 69.50.402(f), the totality of the evidence must demonstrate more than a single isolated incident of illegal drug activity in order to prove that the defendant "maintains" the premises for keeping or selling a controlled substance. *State v. Ceglowski*, 103 Wn. App. 346, 350, 12 P.3d 160 (2000). Sporadic or isolated incidents of drug use do not suffice to prove criminal conduct under the drug house statute. *State v. Ceglowski*, 103 Wn. App. at 351. The requirement that the defendant "maintain" the premises necessarily connotes a course of continuing conduct. *State v. Ceglowski*, 103 Wn. App. at 350. Since "maintain" is not specifically defined in the statute, we employ the plain and ordinary meaning of the word as found in a dictionary. *State v. Ceglowski*, 103 Wn. App. at 350. Black's Law Dictionary defines "maintain" as "'hold or preserve in any particular state or condition;'" and "sustain" or "uphold." *State v. Ceglowski*, 103 Wn. App. at 350 (quoting BLACK'S LAW DICTIONARY 953 (7th ed. 1999)). The ordinary

4

meaning of "maintain" encompasses this concept of continuing conduct: "'to keep or keep up; continue in or with; carry on.'" *State v. Ceglowski*, 103 Wn. App. at 350 (quoting WEBSTER'S NEW WORLD DICTIONARY 854 (2d College ed. 1976)).

"Knowingly maintaining" a place under the federal crack house statute, former 21 U.S.C. § 856(a)(1) (1986), includes acts evidencing control, duration, and continuity. *United States v. Morgan*, 117 F.3d 849, 857 (5th Cir. 1997); *United States v. Clavis*, 956 F.2d 1079, 1090-91, *amended on reh'g*, 977 F.2d 538 (11th Cir. 1992). Still, a small quantity of drugs or evidence found on only a single occasion can be sufficient to show a crime of a continuing nature. *State v. Ceglowski*, 103 Wn. App. at 353. Federal courts have held that this element requires proof that a substantial purpose for maintaining the premises was to conduct the drug activity. *United States v. Verners*, 53 F.3d 291, 296 (10th Cir. 1995); *United States v. Clavis*, 956 F.2d at 1093-94. *State v. Ceglowski* followed the test of "substantial purpose." 103 Wn. App. at 350-52.

In *State v. Ceglowski*, 103 Wn. App. 346 (2000), the State charged Michael Ceglowski with utilizing a tackle and bait shop for using and selling drugs. Officers found .9 grams of methamphetamine in Ceglowski's desk drawer. Still, the State presented evidence of only a single drug sale being conducted in the shop. The State also produced "pay and owe" sheets, which may or may not have been drug related. Nevertheless, nothing tied the records to sales on the premises. This court reversed Ceglowski's conviction.

5

In *State v. Fernandez*, 89 Wn. App. 292, 948 P.2d 872 (1997), the State prosecuted three defendants for operating a drug house. During trial, officers testified about five controlled buys at the defendants' residence, and three neighbors testified to a dramatic increase in pedestrian and vehicular traffic on their street after the defendants occupied the home. Visitors stayed inside the house for two to ten minutes. One neighbor estimated as many as fifteen cars an hour coming and going from the house. The defendants leaned into cars that stopped on the street. The police executed a search warrant and discovered twenty-four grams of cocaine, a scale, sandwich bags, and weapons. The *Fernandez* court found sufficient evidence to prove the defendants maintained the house to sell or store drugs, but no evidence to support a finding that drug users resorted to the house for the purpose of using cocaine. The record contained insufficient evidence that anyone other than those maintaining the house used drugs on the premises.

The case on review includes substantial evidence that people other than Rodney Menard used drugs in the house. The evidence supports ongoing drug use and the use of controlled substances being a substantial purpose for the home. Two witnesses testified that ten to fifteen people each day entered the home to imbibe drugs. When police executed the search warrant, fourteen people, some of whom admitted to use of methamphetamine, occupied the premises. One resident rested methamphetamine near

6

her pillow.  Officers found drug devices scattered throughout the home.  When asked if

people who visit take drugs, Menard answered: "most people do."  CP at 24.

## CONCLUSION

We reverse the dismissal of charges against Rodney Menard for maintaining a

drug dwelling.  We remand for further proceedings.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.