**FILED**
**OCTOBER 24, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

THE STATE OF WASHINGTON,       )
                               )       No.  36458-5-III
                 Respondent,   )
                               )
        v.                     )
                               )
DEVIN ADAM WOOD,               )       UNPUBLISHED OPINION
                               )
                 Appellant.    )

SIDDOWAY, J. — Devin Wood appeals his conviction for maintaining a drug

property, in violation of RCW 69.50.402(1)(f).  He contends the evidence was

insufficient to support the conviction because the State did not prove he committed the

crime by each alternative means submitted to the jury.  We affirm the conviction, but

remand for the trial court to determine appropriate legal financial obligations (LFOs).

FACTS AND PROCEDURE

Mr. Wood was tried to a jury on four counts of delivery of a controlled substance

(two each involving heroin and methamphetamine), and one count each of possession of

heroin and maintaining a drug property.  The charges stemmed from a Columbia River

Drug Task Force operation that targeted Mr. Wood for controlled drug buys using a

confidential informant (CI) on March 3, March 7, and March 16, 2017.  On each occasion

officers searched the CI, gave him buy money, and transported him to the vicinity of a

shed on Mr. Wood's parents' property where Wood lived with his girlfriend.  On each

occasion, the CI returned to the officers with drugs he said he purchased from Mr. Wood.

Following the three controlled buy operations, officers executed a search warrant

for Mr. Wood's shed on March 24, 2017.  Mr. Wood and his girlfriend were both present.

Sergeant Christopher Foreman seized quantities of cash totaling $721 (including a

marked $10 bill from the March 16 buy operation), a small pipe with heroin residue, a

digital scale and an empty ziplock bag that each contained heroin residue, and a glass

methamphetamine pipe with residue of the drug.

Detective Jordan Orrell read Mr. Wood his *Miranda*[1] rights, which he waived and

agreed to speak with the officer.  After a CrR 3.5 hearing, the court ruled Mr. Wood's

statements admissible.  Detective Orrell testified at trial that Mr. Wood said he was a

heroin addict who used daily.  Mr. Wood also admitted he was a drug dealer and sold

heroin and methamphetamine to several identified customers, and that the cash found in

his shed was drug sale proceeds that he planned on using to buy more drugs.  He said the

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966).

empty Ziploc bag was used to store his product and he was awaiting to re-up, as he had been out of drugs for a couple of days. He also told Detective Orrell that "Lucy, his girlfriend, was a meth addict and he provides her with her meth and that she had been living in the shed with him for a while." Report of Proceedings (RP) (Nov. 8, 2018) at 95. Mr. Wood said he no longer used methamphetamine because he had a couple of heart attacks in the past.

The CI's identity was disclosed before trial. He testified that Mr. Wood, his girlfriend, and an unknown third party were present in the shed during the March 3 buy. He said he had to wait outside for a short time prior to the March 7 buy because there were other people inside the shed with Mr. Wood. The CI said that when he arrived for the March 16 buy there were a few people outside and a couple of people inside the shed. The CI did not report seeing drug use in the shed on any of the occasions.

Mr. Wood testified in his own behalf. He said he was employed by his parents doing janitorial services and earned $1500 per month (paid in cash), and that the money the police found in his shed was from those earnings. He denied telling Detective Orrell or any other officer that he sold drugs. He denied ever selling drugs to the CI. He admitted to having a $50 per day heroin addiction. He said he did not pay rent for the shed and that he purchased his food with a $198 per month food stamp allotment.

The jury could not reach a verdict on the four drug delivery counts, but found Mr. Wood guilty of possession of heroin and maintaining a drug property. The court imposed

3

an overall 24-month prison sentence. The court confirmed with Mr. Wood that he earned

$1500 per month from his parents, but did not otherwise inquire into his financial

situation. The court imposed $1150 in LFOs, comprising a mandatory $500 victim

assessment, a $200 criminal filing fee, and a $450 court-appointed attorney fee. The

court reasoned that based on Mr. Wood's trial testimony he should be able to make

payments on the $1150 sum when he is released from prison.

Mr. Wood appeals only the conviction for maintaining a drug property, and the

court's imposition of the criminal filing fee and court-appointed attorney fee LFOs.

### MAINTAINING A DRUG PROPERTY CONVICTION

Mr. Wood contends the evidence was insufficient to support the conviction for

maintaining a drug property because the State did not present evidence to support each

alternative means of committing the crime.

Mr. Wood was convicted of violating RCW 69.50.402(1)(f) (colloquially known

as the drug house statute), which makes it unlawful to knowingly:

> keep or maintain any store, shop, warehouse, dwelling, building, vehicle,
> boat, aircraft, or other structure or place, which is resorted to by persons
> using controlled substances in violation of this chapter for the purpose of
> using these substances, or which is used for keeping or selling them in
> violation of this chapter.

The statute establishes two alternative means by which the crime can be committed—

maintaining a place that others resort to for using drugs, or by using the property to store

or sell drugs. *State v. Fernandez*, 89 Wn. App. 292, 300, 948 P.2d 872 (1997). The

crime requires some evidence that (1) the drug activity is of a continuing and recurring nature; and (2) a substantial purpose of maintaining the premises is for the illegal drug activity. *State v. Menard*, 197 Wn. App. 901, 905, 392 P.3d 1105, *review denied*, 189 Wn.2d 1005 (2017) (citing *State v. Ceglowski*, 103 Wn. App. 346, 352-53, 12 P.3d 160 (2000)). This rule does not mean that "a small quantity of drugs or evidence found on only 'a single occasion cannot be sufficient to show a crime of a continuing nature.'" *Ceglowski*, 103 Wn. App. at 353 (quoting *Barnes v. State*, 255 Ga. 396, 339 S.E.2d 229, 234 (1986)).

Criminal defendants have a right to an expressly unanimous jury verdict. WASH. CONST. art I, § 21; *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). A general verdict of guilty on a crime that can be committed by alternative means will be upheld only if sufficient evidence supports each means. *Id.* at 708; *Fernandez*, 89 Wn. App. at 300. Evidence is sufficient if, after viewing the evidence and all reasonable inferences from that evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from the evidence. *Id.* Circumstantial evidence and direct evidence are equally reliable. *State v. Wilson*, 141 Wn. App. 597, 608, 171 P.3d 501 (2007). We defer to the trier of

fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Here, the State elected to prosecute Mr. Wood under both alternative means of maintaining a drug property. The "to convict" instruction provided that the jury could convict if it found Wood knowingly maintained the property "for the purpose of using controlled substances, or was used for keeping or selling controlled substances." Clerk's Papers at 43. The jury returned a general verdict form of guilty for maintaining a drug property.

Relying principally on *Fernandez*, 89 Wn. App. 292, Mr. Wood contends the State did not present sufficient evidence to support the "using controlled substances" alternative, and therefore the conviction for maintaining a drug property must be reversed and the case remanded for retrial solely on the "keeping or selling" prong.

In *Fernandez*, the State prosecuted three defendants for operating a drug house. During trial, officers testified about five controlled buys at the defendants' residence, and neighbors testified to a dramatic increase in pedestrian and vehicular traffic on their street after the defendants occupied the home. The defendants leaned into cars that stopped on the street and visitors stayed inside the house for 2 to 10 minutes. The police executed a search warrant and discovered dealer quantities of cocaine, a scale, sandwich bags, and weapons. The *Fernandez* court found sufficient evidence to prove the defendants maintained the house to sell or store drugs, but no evidence that anyone but the

6

defendants resorted to the premises for the purpose of using drugs. *Fernandez*, 89 Wn. App. at 300. Because the State did not elect between alternative means and the general verdict form did not reveal which prong the jury used to convict, the conviction was reversed and the case remanded for retrial solely on the storing or selling prong. *Id*.

Mr. Wood contends *Fernandez* requires the same outcome here because the State did not elect between alternatives and the evidence fails to establish that anyone besides him used drugs in the shed. He reasons that although the CI testified to seeing several other people inside and outside the shed, he did not testify to seeing anyone use drugs there on any occasion, let alone multiple occasions. Thus, the "use" prong is unsupported by any evidence. We disagree.

Detective Orrell testified that when the warrant was executed and Mr. Wood was arrested, he said that "Lucy, his girlfriend, was a meth addict and he provides her with her meth, and that she had been living in the shed with him for a while." RP at 95. She was present in the shed when the warrant was executed. A methamphetamine smoking pipe containing residue of the drug was found in the shed. Mr. Wood also told Detective Orrell that he no longer used methamphetamine because he had a couple of heart attacks in the past. It is reasonable to infer in these circumstances that Mr. Wood and his girlfriend both resorted to his shed to use drugs. The evidence was sufficient for the jury to find Mr. Wood guilty of maintaining a drug property under the "using controlled

7

substances" alternative. He does not contend that insufficient evidence supports the "keeping or selling" alternative.

A rational trier of fact could find each element of maintaining a drug property (under either alternative means) beyond a reasonable doubt based upon the evidence. RCW 69.50.402(1)(f); *Salinas*, 119 Wn.2d at 201.

## LFOs

Mr. Wood contends, and the State concedes, that the trial court erred by not adequately inquiring into his ability to pay discretionary LFOs. In view of the State's concession, and recent caselaw and legislation in effect when Mr. Wood was sentenced, we remand for the trial court to determine appropriate LFOs.

Under *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015), a trial court must make "an individualized inquiry into the defendant's current and future ability to pay" before imposing discretionary legal financial obligations, and the inquiry must, at a minimum, consider the effects of incarceration and other debts, as well as whether the defendant meets the GR 34 standard for indigency. In *Ramirez*, the court further emphasized that employment history, income, assets and other financial resources, monthly living expenses, and other debts are relevant to determining a defendant's ability to pay discretionary LFOs. *State v. Ramirez*, 191 Wn.2d 732, 744, 426 P.3d 714 (2018). The court stated that "the record must reflect that the trial court inquired into all five of these categories before deciding to impose discretionary costs." *Id.*

In March 2018, the Washington Legislature enacted Engrossed Second Substitute House Bill 1783 (H.B. 1783), which amended RCW 10.01.160(3) to prohibit the imposition of any discretionary costs on defendants who are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 6(3). The court-appointed attorney fee is a discretionary cost. *See In re Pers. Restraint of Dove*, 196 Wn. App. 148, 155, 381 P.3d 1280 (2016). Also among the changes in H.B. 1783 was an amendment to former RCW 36.18.020(2)(h) to prohibit the imposition of the $200 criminal filing fee on indigent defendants. H.B. 1783 was effective as of June 7, 2018, and applies prospectively to any case that was not final when the amendments were enacted. *Ramirez*, 191 Wn.2d at 747. *Ramirez* was decided on September 20, 2018. Mr. Wood was sentenced on November 26, 2018.

When imposing Mr. Wood's LFOs, the court limited its inquiry to confirming that he worked for his parents and earned $1500 monthly. Under *Blazina*, *Ramirez*, and amended RCW 10.01.160(3), this was insufficient to confirm Mr. Wood's indigency status or ability to pay. We therefore remand for the trial court to make these determinations, and to strike the criminal filing fee and court-appointed attorney fee LFOs if Mr. Wood is confirmed indigent for purposes of RCW 10.01.160(3). We leave for the trial court to consider Mr. Wood's additional contention that his trial testimony that he used food stamps establishes his indigency under RCW 10.101.010(3)(a). ("Indigent" means a person who is receiving food stamps.)

9

No. 36458-5-III
*State v. Wood*

The conviction for maintaining a drug property is affirmed. Remanded solely to determine appropriate LFOs, as set forth in this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, A.C.J.

10